249 S.W.3d 625 (2008)
In the Interest of D.W., T.W., and S.G., Children.
No. 2-06-191-CV.
Court of Appeals of Texas, Fort Worth.
February 19, 2008.
*628 Swanda & Swanda, P.C., Dean M. Swanda, Arlington, for Appellant.
Lee Owens, Arlington, Guardian Ad Litem.
Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Chief, Appellate Division, Sharon A. Johnson, Melissa R. Paschall, Asst. Dist. Attys., Fort Worth and Duke Hooten, Austin, for Appellee.
Before the court en banc.

OPINION
ANNE GARDNER, Justice.
Appellant Betty W. appeals a final order terminating her parental rights to her three children, D.W., T.W., and S.G. In *629 four issues, she complains that (1) the one-year dismissal deadline imposed by section 263.401(a) of the Texas Family Code violates the Separation of Powers Clause of the Texas constitution; (2) the trial court erred by denying her motion to extend the one-year dismissal deadline; (3) section 263.405(i) of the family code, barring review by appellate courts of issues not listed in a statement of points in the trial court, violates the Separation of Powers Clause of the Texas constitution; and (4) section 263.405(i) also violates due process under the United States Constitution. We hold that Betty failed to preserve her first issue under the rules of appellate procedure; that section 263.405(i) violates the Separation of Powers Clause of the Texas constitution; but that, on the merits of Betty's second issue, the trial court did not abuse its discretion by overruling Betty's motion to extend the one-year dismissal deadline. Accordingly, we affirm.
I. Procedural Background
Betty is the biological mother of D.W., T.W., and S.G.[1] The Texas Department of Family and Protective Services ("Department") filed a petition seeking to terminate the parent-child relationship between Betty and her two older children, D.W. and T.W., on June 6, 2005. Betty gave birth to S.G. on July 12, 2005. The Department subsequently filed an amended petition adding S.G.
The trial court set a final hearing in this case for April 3, 2006. Betty filed a "Motion For Extension Of Time To Dismiss Suit Or Render Final Order And Alternative Motion For Continuance" on March 22, 2006. She sought to extend the final hearing deadline by 180 days or, alternatively, to continue the trial date until a time closer to the original dismissal deadline.[2] The trial court's docket sheet reflects that the trial court granted Betty a continuance but only reset the final hearing to May 16, 2006, still within the existing one-year dismissal deadline. Prior to the beginning of the termination hearing on May 16, 2006, Betty's trial counsel re-urged her motion requesting a 180-day extension, but the trial court denied it.
After a hearing on the merits, the trial court found that Betty knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, that Betty engaged in conduct or placed the children with persons who engaged in conduct which endangered their physical or emotional well-being, and that termination of the parent-child relationship was in the best interest of the children. The trial court rendered its final order terminating Betty's parental rights to all three children on May 16, 2006.
On May 31, 2006the fifteenth day after the trial court entered its termination orderBetty's trial counsel filed a notice of appeal and statement of points for appeal, raising only insufficient-evidence *630 points.[3] On June 1the sixteenth day the trial court granted trial counsel's motion to substitute and appointed appellate counsel to represent Betty.
On June 6the twenty-first day after the trial court signed its final orderappellate counsel filed a "Motion for New Trial and Supplemental Statement of Points on Appeal." In her supplemental points, Betty contended that the evidence was factually insufficient to support the trial court's order and that family code section 263.405(i) violates the separation of powers provision of the Texas constitution and the Due Process Clause of the United States Constitution. This appeal followed.
II. Discussion
As previously noted, Texas Family Code section 263.401 provides a one-year dismissal deadline for a suit affecting the parent-child relationship filed by the Department that requests termination or conservatorship, with a one-time extension of 180 days based upon proof of "extraordinary circumstances":
(a) Unless the court has rendered a final order or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.
(b) The court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).[4]
The version of family code section 263.405(i) applicable to this suit provides:
The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial.[5]
Thus, section 263.401 deals with the dismissal deadline while section 263.405(i) deals with what issues we may consider on appeal.
A. Section 263.401's Dismissal Deadline and Separation of Powers
In her first issue, Betty argues that the legislative dismissal deadline found in section 263.401 violates the separation of powers provision of the Texas constitution by interfering with the trial courts' judicial *631 power to determine the timing and speed of disposition of causes. But Betty failed to raise this issue in the trial court.
To preserve her complaint for our review under the Texas Rules of Appellate procedure, Betty must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if the grounds are not apparent from the context of the request, objection, or motion, and she must have obtained an explicit or implicit ruling from the trial court.[6] If a party fails to do this, error is not preserved, and the complaint is waived.[7] Even a constitutional challenge to the facial validity of a statute may apparently be waived if not properly raised in the trial court.[8]
Betty argues the Separation of Powers Clause renders the dismissal statute void so that preservation of her first issue in the trial court was not required. But the cases she relies upon involved challenges to void judgments, which can be attacked at any time, not void statutes.[9] Betty is not contending that the judgment is void; she is complaining that the judgment is erroneous because the statute in question imposes arbitrary deadlines that prevented her from properly presenting her defense.[10] Thus, Betty's complaint does not involve the type of challenge of facial unconstitutionality of a statute that may be asserted for the first time on appeal.
Betty also concedes in her brief that neither her original nor her supplemental statement of points contained a complaint regarding the constitutionality of section 263.401. Because Betty never raised the constitutionality of section 263.401 in the trial court, she cannot raise that issue on appeal.[11] Therefore, we overrule her first issue.
B. Trial Court's Denial of Betty's Motion to Extend Dismissal Deadline

1. Preservation of Error
In her second issue, Betty argues that the trial court erred by denying her *632 motion for a 180-day extension of the dismissal deadline because she showed extraordinary circumstances. Unlike Betty's first issue, this issue was preserved for appeal not just once but twice pursuant to appellate rule 33.1  first by her pretrial motion for extension of the final hearing deadline by 180 days and second by her action in re-urging that motion before trial began  and she obtained a ruling by the trial court on both occasions.[12]

2. New Section 263.405(i) as a Bar to Considering Betty's Second Issue
Nevertheless, the Department contends that section 263.405(i) bars us from considering Betty's second issue because she failed to list it in her original statement of points filed within fifteen days after the judgment was signed as required by section 263.405(b). This brings us to Betty's third issue, in which she contends that, to the extent section 263.405(i) bars our consideration of her issue on the merits, it violates the Separation of Powers Clause of the Texas constitution.[13]
As a threshold matter, we must determine whether we are precluded from considering Betty's third issue challenging the constitutionality of section 263.405(i) because that issue was likewise not included in her original statement of points. As we have already noted, while Betty did not challenge section 263.405(i)'s constitutionality in her original statement of points, she did list that "point" in her supplemental statement of points and motion for new trial.[14]
Nevertheless, because her supplemental statement of points was not filed within the fifteen-day period required by section 263.405(b), the Department argues that section 263.405(i) bars us from even considering Betty's complaints about that section's constitutionality. But our ability to consider points not filed in the trial court within fifteen days did not even come into question until after the appeal reached this court.
Specifically, Betty's complaint of the unconstitutionality of section 263.405(i) under the Separation of Powers Clause raises the question of whether that statute unduly interferes with this Court's own power and authority to exercise its core judicial functions. This issue could not have been addressed by the trial court in the first instance and thus need not have been preserved in the trial court to be raised here.[15]
*633 We hold that Betty properly preserved her complaint that the statute violates the Separation of Powers Clause by raising the issue in her brief in this court.

a. History of Section 263.405(i)
Chapter 263 of the family code provides for hearings for temporary and permanent placement, conservatorship, and termination of parental rights in cases involving dependent and neglected children removed from their homes and placed in foster care by the Department. In 1997, the legislature enacted amendments to chapter 263 to reduce delays in the time spent in foster care by a child awaiting a final decision in a proceeding to terminate parental rights by imposing a one-year limitation for a final order with the possibility of a one-time 180-day extension.[16]
In 2001, the legislature passed additional amendments to the family code to expedite both the hearing and appeals processes. Section 109.002 was amended to provide that all termination appeals are to be "accelerated" and governed by the procedures for an accelerated appeal under the Texas Rules of Appellate Procedure.[17] Section 263.405 was amended to require additional postjudgment and appellate steps regarding final orders involuntarily terminating parental rights.[18] The stated intent of these amendments was, again, to accelerate the appeal process and thereby "help to minimize the time that a child has to be subject to lengthy and distressing court proceedings."[19] Specifically, section 263.405(b), added in 2001, provides:
Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for new trial.[20]
This court and several of our sister courts of appeals have recognized that the purposes of section 263.405(b) were to eliminate frivolous appeals in termination cases, reduce the costs associated with such appeals, and reduce appellate delays.[21] However, we and other courts of appeals also held that failure to file a statement of points or to list a complaint in the statement of points does not deprive us of jurisdiction over the appeal[22] nor necessarily *634 waive review of an issue on appeal.[23] Specifically, this court held that such failure does not constitute a waiver when the appellee does not establish prejudice, following the liberal approach adopted by the supreme court when an appellant has requested only a partial reporter's record but has failed to file a statement of points as required by appellate rule 34.6(c).[24]
Expressing its disapproval of this line of cases as seeming to "effectively repeal" the statute's effort to address postjudgment delay, the legislature enacted section 263.405(i), effective September 1, 2005, instructing us that we may not consider any issue not presented to the trial court in a timely filed statement of points.[25] The House Bill Analysis for that statute states that cases interpreting section 253.405(b) have frustrated the legislature's goal to speed up the postjudgment process by "bog[ging] down the [system] with mistakes" that could have been easily corrected at the trial level by the granting of a new trial.[26] The Bill Analysis further states that section 263.405(i) clarifies the legislature's intent by conclusively establishing that "the Legislature expects litigants to comply with Section 263.405(b)" because compliance as intended "would correct any wrongs 30 days after trial, as opposed to extending reversals months or years after trial."[27]

b. Separation of Powers
A court will not pass on the constitutionality of a statute if the particular case before it may be decided upon independent alternative grounds.[28] But section 263.405(i) by its own terms bars us from considering Betty's issues challenging the constitutionality of that section as well as her second issue on the merits because those issues were not listed in her original statement of points. Nor are we at liberty to determine that any unconstitutionality was "harmless" because the statute says we may not "consider" Betty's second issue to determine whether she would be entitled to prevail on the merits if the statute did not preclude us from reviewing her complaint.[29] Therefore, we are directly confronted with the issue of the constitutionality of section 263.405(i).[30]
*635 We start with the presumption that the legislature intended to comply with the United States and Texas constitutions.[31] If possible, we must interpret a statute in a manner that renders it constitutional.[32] Mindful of these admonitions, we turn to the question of whether section 263.405(i) is unconstitutional as a violation of the Separation of Powers Clause. Since its enactment, several courts of appeals have questioned the practical application and constitutionality of the statute, but we are aware of no case that has addressed its constitutionality under the Separation of Powers Clause.[33]
Section I of article II of the constitution provides:
The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[34]
The Separation of Powers Clause is violated (1) when one branch of government assumes power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other cannot effectively exercise its constitutionally assigned powers.[35] Any attempt by one branch of government to interfere unduly with the powers of another is null and void.[36] As stated in a landmark case on this subject by the Supreme Court of Texas:
The separation of powers was believed by Montesquieu, by Blackstone, and by American Constitution makers of the eighteenth century to be one of the chief and most admirable characteristics of the English Constitution.
A principle which is the very foundation of the government of the United States and of the several states must be deemed one essential to the preservation and liberties of the people, and should be thoughtfully and faithfully observed by all clothed with the powers of government.[37]
*636 The judicial power is vested in the courts created by the constitution and, as provided in the Separation of Powers Clause, is not subject to change by the legislature "except in the instances herein expressly permitted."[38] Article V, section 1 of the Texas constitution vests "[t]he judicial power of this State . . . in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts . . . and in such other courts as may be provided by law.[39] Article V, section 6(a) of the constitution expressly grants the courts of appeals appellate jurisdiction co-extensive with the limits of their respective jurisdictions, which shall extend to "all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error."[40]
Article V, section 6(a) of the constitution also grants courts of appeals "original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law."[41] Thus, our jurisdiction over an appeal may arise from either (1) the general constitutional grant, or (2) a specific statutory grant of jurisdiction as may be prescribed by the legislature.[42]
The Department first argues that our jurisdiction in termination cases is purely statutory and not constitutional because the right to appeal in a termination suit in Texas is expressly granted by the family code.[43] Thus, the Department contends, the legislature may place such restrictions on the right of appeal as it chooses. We disagree.[44]
Our judicial power is conferred by the constitution.[45] Our constitutional jurisdiction extends to appeals in all cases of which the district courts have original jurisdiction, which includes termination cases.[46] Appeals in termination cases have *637 long predated section 109.002 of the family code and its predecessor statutes.[47] Family code section 109.002(a) merely recognizes our existing appellate jurisdiction in termination cases, i.e., "as in civil cases generally."[48]
The Department next posits that the legislature still retains the power to impose restrictions and regulations on our appellate jurisdiction, which it has done by enacting section 263.405(i). This is so, the Department argues, because our constitutional jurisdiction is granted subject expressly to "such restrictions and regulations as may be prescribed by law."[49] Thus, the Department contends, our jurisdiction is not absolute but is subject to limitation by the legislature.
We agree that our constitutionally granted jurisdiction is not absolute. But neither is the legislature's power to restrict and regulate the appellate courts' jurisdiction unlimited.[50] Specifically, "[i]t is [ ] when the functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the executive or legislative branches that a constitutional problem arises."[51] We recently acknowledged that the legislature may restrict and regulate our constitutional jurisdiction over appeals from orders terminating parental rights.[52] But in the same paragraph, we pointed out that the legislature cannot interfere with our constitutionally granted powers and that any attempt to do so would be null and void.[53] The legislature plainly may not interfere with the functions and powers of the judicial branch so as to usurp *638 those functions and powers.[54]
The Department also asserts that section 263.405(i) is a permissible restriction on our judicial power, relying upon cases holding that the legislature may not only restrict or limit but may even deny altogether the right of appeal. But Texas already provides the right of appeal from a judgment terminating parental rights.[55] Where appellate court review is permitted, the avenues for appeal must be kept free of unreasonable restrictions that hinder the exercise of our power of appellate review.[56] Moreover, restricting the individual right of appeal of a litigant is not the same as restricting our judicial power. While due process prevents undue restriction on parents in exercising their right of appeal, it is restrictions on our judicial power that implicate the doctrine of separation of powers.[57]
All but one of the cases relied upon by the Department merely involved questions of statutory construction of language of statutes limiting the right of appeal; in none of those cases was the separation of powers doctrine raised.[58] The last case relied on by the Department, Rushing v. State, is also distinguishable.[59] The court of criminal appeals held in that case that the claim in question was merely a "particular kind of jurisdictional claim of legislative creation" under the juvenile court system that had been created by the legislature, so that the legislature retained power to prescribe the requirement for preservation of error as to the claim without violating the Separation of Powers Clause.[60] The court also based its holding, *639 in part, on its own precedent that rules of appellate procedure could not trump statutes in criminal cases.[61] But terminations of parental rights are not criminal cases. And, as we have previously noted, both the district courts' and the appellate courts' power in parental termination suits is constitutional rather than statutory.[62] And, finally, neither section 263.405(b) nor (i) is a preservation of error statute like the statute in Rushing.
The Department argues that section 263.405(i) does not interfere with the "appellate [c]ourt's discretion or power to rule on issues once they are properly before the court. It merely creates a process which litigants must follow to bring an issue before the [c]ourt." We agree that section 263.405(i) is intended as a procedural rule.[63] But this is not the end of our inquiry.
Nothing in section 263.405(i) suggests that the legislature intended by that statute to substitute the statement of points for the rules of civil and appellate procedure in order to preserve error in cases involving involuntary termination of parental rights. No one would suggest that Betty could have preserved error regarding her complaint of the denial of an extension of the one-year dismissal deadline only after trial by listing it in a statement of points filed fifteen days after the final order was signed. Nothing in either (b) or (i) suggests that timely filing a statement of points listing all of the issues to be raised on appeal will bring an issue listed in that statement before the appellate court. A prospective appellant must still have timely and properly complied with all applicable rules of procedure governing preservation of error in order for any complaints to be considered on appeal. Contrary to the Department's position, neither section 263.405(b) nor (i) "creates a process which litigants must follow to bring an issue before the [appellate c]ourt."
In order to be properly before the appellate court, any complaints must have been timely called to the trial court's attention before or during trial (including complaints related to pleadings, voir dire, admissibility of evidence, charge errors, or improper jury argument), or they must be listed in a timely filed postjudgment motion (for complaints seeking rendition) or in a motion for new trial (for complaints seeking remand such as factual insufficiency of evidence to support jury findings and complaints that require evidence to be produced at the new trial hearing).[64]
The rules of civil and appellate procedure have the force and effect of *640 statutes and as binding supreme court decisions.[65] Accordingly, we must continue to observe and follow those rules; we have no authority to deviate from them.[66] Under appellate rule 47.1, a court of appeals must hand down a written opinion that addresses "every issue raised and necessary" to the final disposition of an appeal.[67] Therefore, pursuant to appellate rule 33.1, we must address and decide the merits of Betty's second issue because she properly preserved it for appeal by her motion for extension of the dismissal deadline that she timely presented and then re-urged prior to trial.[68]
Section 263.405(i) prohibits us from considering Betty's second issue even though it was properly preserved. But for the reasons stated below, we hold that section 263.405(i) is void because it violates the Separation of Powers Clause of the constitution to the extent that it forecloses our power to review issues properly preserved for appeal because the statute unduly interferes with our substantive power as an appellate court to rehear and determine issues on the merits that were decided in the court below.[69]
The legislature may not "infringe upon the substantive power of the Judicial department under the guise of establishing `rules of court,' thus rendering the separation of powers doctrine meaningless."[70] Even in the period before the Rule Making Act of 1939 when rules of procedure were prescribed by statute,[71] the supreme court held that "[t]he legislature [may] regulate the procedure by which jurisdiction conferred by the constitution may be exercised . . . and procedure in the appellate courts, but it [may] not substantially impair the constitutional jurisdiction granted *641 nor practically defeat its exercise."[72]
In Meshell v. State, the court of criminal appeals was faced with whether the version of the Speedy Trial Act then in effect encroached upon the substantive powers of the judicial branch in violation of the Separation of Powers Clause or whether by that Act the legislature legitimately provided a statutory procedural rule to guide in enforcement of a substantive right.[73] The court held the Act unconstitutional by imposing a deadline on readiness for trial by county attorneys, as members of the judicial branch, although the Act purported to establish only a procedural guideline for enforcement of a defendant's right to a speedy trial.[74]
The court's analysis in Meshell focused, first, on the nature of the legislative action complained of and, second, on whether that action encroached on the power of the judicial branch.[75] The court first identified the substantive right the legislature intended to enforce by imposing procedural guidelines, i.e., the right to a speedy trial, but observed that, from its plain language, the Act was directed only at expediting the prosecutor's preparation and readiness for trial, not at expediting actual commencement of trial.[76] The court concluded the Act thus did not accomplish the stated objective, even incidentally, of speeding a case to trial, but only guaranteed a dismissal to the defendant if there was prosecutorial delay in preparing for trial. In so doing, the court concluded, the legislature encroached upon the exclusive prosecutorial discretion of the county attorney and thereby violated the Separation of Powers Clause.[77]
In Williams v. State, the court of criminal appeals focused on the effect of legislative encroachment on the judicial power.[78] The court held that a statute requiring a ninety-five percent remittitur of a judgment forfeiting bond if statutory requirements were met within two years after judgment, in effect, was a modification of a final judgment and thus violated the separation of powers provision because it usurped the judicial branch's function and power over final judgments.[79] In Armadillo Bail Bonds v. State, the court of criminal appeals considered a similar statute that the legislature apparently enacted in an attempt to circumvent the holding in Williams, limiting a trial court's authority to enter a final judgment until eighteen months after a forfeiture was entered.[80]
The court in Armadillo Bail Bonds observed that certain judicial functions are so fundamental that courts alone may determine when and how those functions are to be exercised.[81] The court concluded that *642 there must remain some realm of judicial "activity so fundamental and so inherent in its very nature as a court that to divest it of its absolute command within these spheres is to make meaningless the very phrase judicial power."[82] Looking to decisions of other states, the court found a consensus of opinion  with which it agreed  that when and how cases shall be decided may not be dictated by the legislature but are matters solely for the judicial branch of government.[83]
The Armadillo Bail Bonds court reasoned as follows: the statute would compel the trial court to refrain from exercising a part of its "core power," i.e., entry of final judgment, for a year and a half; and if that requirement were valid, then "nothing prohibits the legislature from imposing an interminable delay in obtaining final judgment."[84] In short, if the statute were valid, then the legislature would have the power to "render the Judiciary impotent with respect to entry of final judgments;" therefore, the statute unduly interfered with the judiciary's effective exercise of its constitutionally-assigned power and was invalid as a violation of the Separation of Powers Clause.[85]
We first apply the Meshell analysis to section 263.405(i). As we have seen, that section was added in an effort to enforce the requirement of a timely statement of points in order to give the trial court an opportunity to correct its own errors by granting a new trial, thereby minimizing postjudgment and appellate delays. We share the legislature's concern with postjudgment and appellate delays as well as its desire to reduce the time children removed from their parents must spend in foster care. We also share its concern with eliminating frivolous appeals and reduction in costs, two other stated purposes of section 263.405(b) in requiring the statement of points.
But section 253.405(i) is not directed at those goals, even incidentally. Instead, it is directed at simply prohibiting exercise of our appellate power to review issues. Rather than expediting the postjudgment and appellate process and cutting down on delay, it merely guarantees the Department an affirmance of all errors not listed in a statement of points, regardless of merit. The consequence of sections 263.405(b) and (i) together is that, if complaints are not listed in a timely filed statement of points, even meritorious complaints otherwise timely and properly preserved for appeal under the rules are forever barred from appellate review.
Moreover, neither section 263.405(b) nor (i) expedites the postjudgment or appellate process; the appellate rules and the family code already provide for an accelerated appeal process for judgments terminating *643 parental rights.[86] The fifteen-day filing deadline for a statement of points neither accelerates nor expedites any timetable for postjudgment motions or for the necessary steps for appeal. Because the termination order is a final judgment, the appealing party still has thirty days under rule of civil procedure 329b to file a motion for new trial, an additional fifteen days after the statement of points is due.[87] The times for filing other postjudgment motions and for perfecting an appeal still begin with the signing of the final termination order, and the accelerated appellate timetable still begins to run from the date the final order is signed, with the notice of appeal still due twenty days after the order is signed,[88] the reporter's record and clerk's record still due sixty days after the notice of appeal is filed,[89] and the appellate briefing schedule still beginning twenty days thereafter.[90]
The House Bill Analysis for section 263.405(i) also states that the new section, by prohibiting courts of appeals from considering issues not included in the statement of points, accomplishes the purpose of allowing the trial court "to correct any errors within thirty days after trial or grant a new trial, thereby avoiding lengthy appeals."[91] But new section 263.405(i) does no such thing.[92] Making the statement of points mandatory upon pain of waiver does not ensure errorless judgments nor eliminate the necessity for an appeal. Nothing in the statute provides any guarantee that filing a statement of points will cause a trial court to be any more likely to correct its errors or to grant a new trial so as to eliminate the requirement for an appeal than when error is timely and properly presented to the trial court pursuant to the rules of procedure. If a statement of points in the trial court sufficed to obtain correction of errors, our existence as an appellate court as contemplated by the constitution would be rendered totally unnecessary.
Thus, section 263.405(b) creates a duplicative procedural hurdle over and above the long-established procedural rules for preservation of error; yet compliance with that statute does not preserve error for appeal. The statute merely adds additional cost and delay instead of reducing it while section (i) ultimately precludes our review of claims that have otherwise been properly preserved, resulting in affirmance in otherwise meritorious appeals as well as frivolous ones.
Our existing civil trial and civil appellate procedural schemes designed and promulgated by the supreme court already carry out the stated goals of the legislature. The existing rules minimize delay, they assure that parties must bring every complaint of error to the attention of the trial court in a timely manner, and they provide the trial court ample opportunity at every *644 step of the trial proceedings to cure its own errors and grant new trials when needed, so as to eliminate unnecessary appeals. But they also allow meritorious claims to be reviewed and corrected on appeal.[93]
Why is the statutory mandate  that an issue cannot be considered on appeal if not listed in a timely filed statement of points  different from preservation of error requirements imposed by the rules of civil and appellate procedure? After all, doesn't the statute, like the rules, provide that appellate courts cannot consider issues not properly and timely raised in the trial court? Yes, but there are significant differences. First, as already discussed above, a statement of points does not preserve error for appeal, unlike preservation of error rules. The statement of points only serves a purpose in the trial court to allow it to consider whether issues are frivolous. Second, unlike preservation of error rules that require presentation of a motion, objection, or request to and a ruling by the trial court, there is no requirement that the trial court even rule on the statement of points.
Third, appellate courts interpret and apply the rules of procedure promulgated by the supreme court liberally so as to resolve issues on the merits whenever possible.[94] In contrast, by the statute clearly prohibiting appellate courts from considering any issue not listed in a statement of points, appellate courts are deprived of any discretion to allow consideration of issues even when literal application of the terms of the statute defeats the aim of resolving appeals on the merits.[95] Finally, as the supreme court has pointed out, while the civil and appellate rules promulgated by that court do place restrictions upon the right of access to an appellate tribunal, those restrictions "serve to provide a more *645 orderly and efficient judicial system."[96] For the reasons so well articulated by our sister courts, we are unable to see how sections 263.405(b) or (i) serve to provide a more orderly or efficient judicial system.[97] Thus, under the Meshell analysis, section 263.405(i) is not directed at the goals the legislature seeks to accomplish. Instead, it merely guarantees that the Department wins by blocking the exercise of our appellate judicial function. As in Meshell, under the guise of establishing a procedural rule by the statute in question, the legislature has unduly interfered with our substantive appellate powers.
This conclusion is reinforced by utilizing the Armadillo Bail Bonds approach. Section 263.405(i) interferes with our power to exercise discretion in determining whether to consider issues not listed in a statement of points, even in absence of prejudice to the Department. The statute bars our consideration of all issues not listed even when they were properly preserved for review under the rules of procedure. In effect, the legislature decides for us that complaints not listed in a timely statement of points are waived. In so doing, section 263.405(i) infringes upon our ability to exercise a "core power" reserved for the judicial branch by telling us not only how we must rule on issues brought before us but that we cannot consider those issues at all.[98] We hold that section 263.405(i) is, therefore, void as a violation of the separation of powers provision of the Texas constitution.[99] We sustain Betty's third issue in part.

3. Review of denial of motion to extend dismissal deadline
Because section 263.405(i) is void, we are not barred by that statute from considering points that were not listed in a statement of points so long as they were properly preserved for appellate review. Thus, we are now able to turn to the merits of Betty's second issue, whether the trial court erred by denying her motion to extend the dismissal deadline under section 263.401(b).

a. Factual background
On June 4, 2005, in response to a 9-1-1 call made by Betty, eleven-month-old T.W. was taken to the Cook Children's Medical *646 Center emergency room, unconscious and suffering from severe head trauma. A CT scan revealed T.W. had suffered a parietal skull fracture with subdural and epidural bleeding. Dr. Tom Haddock, who saw T.W. in the emergency room, testified that her injuries were consistent with her head having been slammed against a hard object, and the amount of bleeding indicated extreme force had been used. Dr. Haddock also testified that he observed scabbed-over linear stripes on T.W.'s right forearm, consistent with her having been struck with a rope or wire. T.W. also had linear striping and bruising to her upper back. T.W. was admitted to the pediatric intensive care unit and remained there for almost a month.
On the same date that T.W. was admitted to the hospital, the Department took three-year-old D.W. to Cook Children's for an evaluation because his sibling had been admitted to intensive care. D.W.'s body displayed numerous old scars on his back, buttocks, and hands, all indicative of physical abuse. Betty told a Department investigator that Stevie G., by whom she was eight months pregnant with another child, had inflicted all of the marks on D.W. and T.W. and that, during the eleven months she and Stevie had been together, Stevie had been hitting D.W. and T.W. with a switch or belt until he left marks. Betty later admitted to Detective Eel that her mother, Janice W., as well as Stevie, hit the children. Betty went on to tell the Department investigator that around 1:45 a.m. of the day T.W. was taken to the emergency room, Stevie had hit T.W.'s head against the wall twice, yelling at her to go to sleep. She also said Stevie had inflicted the linear marks on T.W.'s arm.
Betty told Detective Ezelle at least two different stories concerning T.W.'s injuries. She first said that T.W. woke up in the middle of the night, vomiting, and that she did not realize Stevie had injured T.W. Betty later said that T.W. woke up around 2:00 a.m. and began vomiting around 3:00 or 4:00 a.m. She also said Stevie hit T.W. with a belt, and when he put her back on a pallet on the floor, her head hit the wall more than once. When Detective Ezelle visited Betty's house, he found an indentation in the wall above a pallet.
At the time of the termination hearing, T.W., then twenty-three months old, had just begun walking with the assistance of braces on both legs. T.W. suffers ataxia, which affects the parts of the nervous system that control balance and movement, and because her balance is so poor, she needs a compression suit to walk on her own. T.W. also suffers from frequent seizures, has problems swallowing clear liquids, and has some loss of vision. In July of 2005, Betty gave birth to S.G., who was placed in foster care the day after her birth. At the time of the termination hearing, all three children had been placed together in one foster home.[100]
April Hawkins was the Department caseworker assigned to Betty's case. She testified that all three children had medical and physical issues. Hawkins said that Betty had stopped attending Department-funded counseling on March 23, 2006, about seven weeks before trial. Based on her observations of Betty with the children, Hawkins did not think Betty could raise the children on her own. During the visits, Betty would hold the baby and not interact with the other two children. Although Betty had completed a parenting-skills class, Hawkins said that she did not *647 see Betty use any such skills except on the baby. All three children were in pull-ups or diapers, and on one occasion it took Betty thirty minutes to change two diapers.
Hawkins testified that Betty had substantially complied with her service plan except for obtaining stable housing. One factor out of Betty's control was the recent influx of hurricane victims, which made obtaining housing through the housing authority more difficult. Betty lived with her mother, Janice, and Betty had identified Janice as one of the people who was hitting the children. Also, Janice had failed to protect Betty from sexual abuse by Betty's stepfather. According to Betty, who said she was a teen at the time, Janice was aware of the abuse but did nothing to stop it. Moreover, Hawkins testified that Betty continued to see Stevie, the man who had injured T.W.
As part of her service plan, Betty underwent an assessment at MHMR, but MHMR denied her any services because Betty functioned below the minimum level necessary to qualify for services. Hawkins testified that the Department thought Betty should make another attempt to obtain MHMR services, and she thought that Betty had an appointment to be reassessed in the month following trial.

b. Standard of review
Because an extension of the dismissal date is similar to a continuance and because section 263.401(b) does not indicate which appellate standard of review to apply, we apply the abuse of discretion standard.[101]
To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[102] Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.[103]
An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.[104] Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.[105]

c. Discussion
Betty argues that the trial court abused its discretion by failing to find that her upcoming appointment with MHMR and the influx of hurricane victims  a factor beyond Betty's control that made it impossible for her to find stable housing through the housing authority  were extraordinary circumstances that justified an extension of the dismissal deadline.[106] We disagree.
The trial court first considered Betty's motion to extend the dismissal deadline on March 28, 2006. But there is no record of that hearing or the evidence. Because no record was made of the March 28 hearing, *648 we must presume that the evidence supported the trial court's ruling and, therefore, we hold that the trial court did not abuse its discretion in denying Betty's pretrial motion.[107]
Betty re-urged her motion at the beginning of the final hearing. Betty presented no evidence pertaining to the motion, but trial counsel asserted that Betty needed a 180-day extension because MHMR had provided her with the name of an entity that was willing to provide services to her beginning a month later and because "she's still receiving difficulty from the Housing Authority in terms of having an apartment available to her." Because Betty presented no evidence when she reurged her motion, she cannot show that the trial court abused its discretion when it denied her motion.[108]
To the extent Betty's second issue encompasses the overruling by operation of law of her motion for new trial, in which she argued that the trial court erred by failing to grant her 263.401(b) motion, after the trial court heard evidence pertinent to her motion to extend the dismissal deadline, we hold that the trial court did not abuse its discretion. The evidence presented to the trial court during the final hearing did not render the denial of the motion arbitrary or unreasonable. Hawkins testified that, contrary to counsel's pretrial assertion, Betty's upcoming appointment with MHMR was merely for reassessment, not for definite placement in a service program. In light of all of the other evidence presented at trial, we cannot say that the trial court abused its discretion by failing to find extraordinary circumstances that justified a 180-day extension of the dismissal deadline. We overrule Betty's second issue.
III. Conclusion
Having sustained Betty's third issue in part and overruled it in part, having overruled her first and second issues, and not reaching her fourth issue, we affirm the trial court's final order terminating her parental rights to D.W., T.W., and S.G.
CAYCE, C.J., filed a dissenting and concurring opinion in which HOLMAN, J. joins.
McCOY, J., filed a concurring opinion.

DISSENTING AND CONCURRING OPINION
JOHN CAYCE, Chief Justice.
I respectfully dissent to the majority's dicta opinion holding that section 263.405(i) of the Texas Family Code violates the separation of powers clause of the Texas Constitution.[1] I concur in the judgment only.
Generally, a reviewing court determines constitutional questions only when the court cannot resolve the issues on nonconstitutional grounds.[2] Betty's only complaint on appeal concerning the trial court's actions in this case is that the trial *649 court abused its discretion by denying her section 263.401(b) motion for an extension of the dismissal deadline. Betty, however, failed to make a record of the hearing on her motion to extend the deadline. Consequently, the majority affirmed the trial court's ruling without reaching the merits of Betty's complaint.[3] It was, therefore, unnecessary to the disposition of this appeal for the majority to decide the question of whether section 263.405(i) violates the separation of powers clause because it bars us from reviewing the merits of Betty's complaint. The majority's opinion on that issue is dicta. It is also wrong.
The right to appeal a termination order is statutory, not constitutional.[4] While the constitution confers on the appellate courts the general power to review appeals in civil cases, including termination proceedings, this power is expressly subject to "such restrictions and regulations as may be prescribed by law."[5] As the Supreme Court of Texas stated in Seale v. McCallum, "[T]he principle is fixed that the Legislature has the power to limit the right of appeal. . . ."[6] Thus, our constitutional power to review an appeal from a termination order may be limited by the Legislature.[7]
The applicable version of section 263.405 of the family code provides in pertinent part:
(a) An appeal of a final order rendered under this subchapter is governed by the rules of the supreme court for accelerated appeals in civil cases and the procedures provided by this section . . .
(b) Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for a new trial.
. . . .

(i) The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial. . . . [8]
Under section 263.405, an appellant has the right to appellate review of any issue *650 that is presented to the trial court in a timely-filed statement of points pursuant to section 263.405(b) and that is otherwise preserved in accordance with the rules of the Supreme Court of Texas.[9] The Legislature has declared in section 263.405(i), however, that there is no right to appellate review of an issue that is not preserved in accordance with the procedures provided by the section.[10] Because the right to appeal a termination order is statutory, the limitation of section 263.405(i) on an appellant's right to appellate review of a termination order constitutes a proper exercise of the Legislature's constitutional power to regulate and restrict such appeals. It does not interfere with our power to review and decide issues that have been preserved in accordance with the rules and procedures governing section 263.405.
In comparing section 263.405 to court-made preservation of error rules, the majority performs a legislative function under the guise of judicial decision making. The majority holds that appellate rule 33.1(a) bars us from reviewing Betty's first issue because it was not timely presented to the trial court, but then the majority strikes down section 263.405(i) as having "unduly interfered with our substantive appellate powers" because it bars us from reviewing two other issues that were, likewise, not timely presented to the trial court.[11] The only explanation the majority offers for its deference to the court-made rules over the statutory rules is that, in the majority's view, the court-made rules better serve the policy goals of the statute.[12] This is a matter for the Legislature to decide, not the courts. While we may question the wisdom and efficacy of the statute, we may not refuse to follow its procedures merely because we believe they are flawed or that they fail to promote the Legislature's objectives.[13]
The test for whether the separation of powers clause is violated by a procedural statute is not whether the legislative purpose of the statute is served effectively by the statute or whether court-made rules achieve the policy goals of the statute better than the statute itself. As the majority notes, "[i]t is [only] when the functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the . . . legislative branch[ ] that a constitutional problem arises."[14] Appeals from termination orders *651 have not been constitutionally committed to the control of the courts. The right of appeal in a termination case is subject to the restrictions and regulations of the Legislature, and the mere possibility that a statute regulating this right may fail, in whole or in part, to accomplish its legislative purpose does not render the statute unconstitutional under the separation of powers clause.
The majority claims that, contrary to the statute's legislative history, section 263.405(i) is not "directed at" the legislative goals of reducing post judgment delay and frivolous appeals but, instead, is exclusively directed at "prohibiting exercise of our appellate power to review issues."[15] The majority provides no support for what it perceives to be such a sinister legislative motive, other than the majority's own criticisms of the statute in favor of court-made rules that similarly prohibit us from reviewing issues that are not preserved.[16] Nothing in the language of section 263.405(i), its legislative history, or its practical application suggests that the statute is directed at accomplishing any purpose other than the goals expressed by the Legislature when it enacted the statute.[17] As this court sitting en banc unanimously held in In re M.R.J.M.,[18] "[Section 263.405] is not intended to bar appeals that raise meritorious complaints, nor is it intended to prevent appellate courts from conducting meaningful review of such complaints."[19] But, even assuming the Legislature's only purpose in enacting section 263.405(i) was to limit our appellate review power to issues preserved in accordance with the procedures provided by subsection (b), the Legislature has the constitutional power to place this restriction on us.[20]
*652 In conclusion, unlike the statutes in the three inapposite criminal law cases on which the majority misplaces its reliance,[21] section 263.405(i) does not tell us how to perform our judicial function or "how we must rule on issues brought before us."[22] It simply limits appellate review of termination orders to issues that are preserved in accordance with the procedures provided by the statute. This limitation is well within the Legislature's constitutional power to regulate and restrict the right to appeal a termination order.
Because there is no record of the hearing on Betty's motion to extend the dismissal deadline under section 263.401(b), we must affirm the trial court's denial of the motion without reviewing the merits of Betty's complaint that it should have been granted. I would, therefore, not address Betty's argument that section 263.405(i) violates the separation of powers clause because it bars us from reviewing the merits of her complaint. Otherwise, I would overrule Betty's separation of powers argument, dismiss her other issues because they were not preserved in her timely-filed statement of points,[23] and affirm the judgment of the trial court.[24]
HOLMAN, J., joins.

*653 CONCURRING OPINION
BOB McCOY, Justice.
I agree with the dissent that "[i]t was, therefore, unnecessary to the disposition of this appeal for the majority to decide the question of whether section 263.405(i) violates the separation of powers clause because it bars us from reviewing the merits of Betty's complaint. The majority's opinion on that issue is dicta." Dissenting and concurring op. at 2. I concur only with the *654 majority's affirmance of the trial court's final order terminating parental rights. Because I would hold that it was not necessary to reach the constitutional question concerning section 263.405(i) of the Texas Family Code, I do not join in either opinion's analysis of the constitutionality of that statute.
NOTES
[1] Ricardo R., D.W.'s biological father, was never located. The trial court appointed an attorney ad litem to represent him. Randy F., T.W.'s biological father, filed an affidavit of waiver of interest. Stevie G., S.G.'s biological father, was served with a copy of the petition and notified of the hearing date but failed to appear.
[2] Family code section 263.401(a) provides that unless the trial court has rendered a final judgment, on the first Monday after the first anniversary of the date the court appointed the Department as temporary managing conservator, it shall dismiss the Department's suit. TEX. FAM.CODE ANN. § 263.401(a) (Vernon Supp. 2006). The trial court may retain the suit on its docket for an additional 180 days under extraordinary circumstances. Id. § 263.401(b).
[3] See id. § 263.405(b) (Vernon Supp. 2006) (providing that a party intending to appeal a termination order must file a statement of points for appeal not later than the fifteenth day after the date of the final order). Effective for cases filed after June 16, 2007, the Legislature amended section 263.405(b) to add a requirement that a party intending to request a new trial "must file a request not later than 15 days after the date a final order is signed." Act of May 21, 2007, 80th Leg., R.S., ch. 526, §§ 2, 6, 2007 Tex. Sess. Law Serv. 931, 931-32 (Vernon) (to be codified as an amendment of TEX. FAM.CODE ANN. § 263.405(b)). The amended version is not applicable to this case.
[4] TEX. FAM.CODE ANN. § 263.401(a).
[5] id. § 263.405(i) (Vernon Supp. 2007).
[6] TEX.R.APP. P. 33.1(a).
[7] Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).
[8] In re Doe 2, 19 S.W.3d 278, 284 (Tex.2000) (holding facial constitutional challenge based on Separation of Powers Clause not properly considered on appeal where not raised in trial court); see In re R.B., 225 S.W.3d 798, 802 (Tex.App.-Fort Worth 2007, no pet.) (holding constitutional challenge based on facial invalidity of statute in parental termination case waived when not raised in trial court); see also In re B.L.D., 113 S.W.3d 340, 354-55 (Tex.2003) (holding courts of appeals must not retreat from error preservation standards to review unpreserved error in parental rights termination cases), cert. denied, 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004).
[9] Compare In re Doe 2, 19 S.W.3d at 284 (holding preservation of error required for complaint of void statute) and Meshell v. State, 739 S.W.2d 246, 252 (Tex.Crim.App. 1987) (holding statute void as violating separation of powers provision) with In re Nash, 13 S.W.3d 894, 899 (Tex.App.-Beaumont 2000, no pet.) (holding void judgment subject to collateral attack at any time).
[10] Nor is Betty contending that the judgment here is based on a void statute. See Rabb v. State, 730 S.W.2d 751, 752 (Tex.Crim.App. 1987) (holding voidness of statute on which conviction is based may be raised for first time on appeal); see also Barnett v. State, 201 S.W.3d 231, 232 (Tex.App.-Fort Worth 2006, no pet.) (discussing rationale for Rabb exception to general rule that failure to object at trial waives any complaint on appeal); 43A George E. Dix et al., Texas Practice: Criminal Practice & Procedure, §§ 42.253-54 (2d ed. 2001).
[11] See In re K.A.S., 131 S.W.3d 215, 231 (Tex. App.-Fort Worth 2004, pet. denied) (holding that because constitutional attacks on section 263.401 were not raised in the trial court, the parent had waived the right to assert them on appeal).
[12] TEX.R.APP. P. 33.1(a); see In re B.L.D., 113 S.W.3d at 349.
[13] Betty also contends that we should utilize rule 2 to suspend the statement of points requirement. TEX.R.APP. P. 2. We disagree. Rule 2, by its own terms, applies only to suspend appellate rules, not statutes. Moreover, the rule does not provide for retroactive suspension of a rule governing events that have already occurred. See State v. Garza, 931 S.W.2d 560, 563 (Tex.Crim.App.1996). We overrule that portion of Betty's third issue contending that rule 2 may be used to suspend operation of section 263.405(i).
[14] No court appears to have considered whether a timely filed statement of points may be supplemented or amended to add additional points after expiration of the fifteen-day deadline of section 263.405(b). But see In re M.N., 230 S.W.3d 248, 249-50 (Tex. App.-Eastland 2007, no pet.) (holding issue waived that was only contained in motion for new trial filed after fifteen-day deadline expired, even though trial court granted motion to extend time to file statement of points).
[15] See In re K.A.F., 160 S.W.3d 923, 928 (Tex.) (acknowledging constitutional issues related to provisions of family code governing appeals could not have been raised in trial court and, therefore, were required to be raised in court of appeals to preserve error for consideration by supreme court), cert. denied, 546 U.S. 961, 126 S.Ct. 483, 163 L.Ed.2d 364 (2005); see also Mercer v. Phillips Natural Gas Co., 746 S.W.2d 933, 936 (Tex.App.-Austin 1988, writ denied) (recognizing general rule that constitutional question "must be raised at earliest opportunity").
[16] See HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 2249, 77th Leg., R.S. (2001).
[17] TEX. FAM.CODE ANN. § 109.002 (Vernon 2002); see TEX.R.APP. P. 26.1(b) (providing notice of appeal must be filed within twenty days after judgment is signed in an accelerated appeal).
[18] Id. § 263.405.
[19] See HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 2249, 77th Leg., R.S. (2001).
[20] TEX. FAM.CODE ANN. § 263.405(b); In re D.R.L.M., 84 S.W.3d 281, 291 (Tex.App.-Fort Worth 2002, pet. denied).
[21] In re M.R.J.M., 193 S.W.3d 670, 675 & n. 21 (Tex.App.-Fort Worth 2006, no pet.) (citing In re S.J.G., 124 S.W.3d 237, 242-43 (Tex. App.-Fort Worth 2003, pet. denied); In re M.G.D., 108 S.W.3d 508, 516 (Tex.App.-Houston [14th Dist.] 2003, pet. denied)).
[22] In re W.J.H., 111 S.W.3d 707, 712 & n. 12 (Tex.App.-Fort Worth 2003, pet. denied) (citing In re J.B.W., 99 S.W.3d 218, 221 (Tex. App.-Fort Worth 2003, pet. denied)); see also In re S.J.G., 124 S.W.3d at 243 (holding failure to file statement of points not a jurisdictional bar to appeal); In re S.E., 203 S.W.3d 14, 15 (Tex.App.-San Antonio 2006, no pet.) (same).
[23] In re W.J.H., 111 S.W.3d at 712.
[24] Id. at 712, n. 13 (discussing Bennett v. Cochran, 96 S.W.3d 227, 229 (Tex.2002), rejecting strict compliance with the rule when a "rigid application" would result in denying review on the merits, even though the appellee has not demonstrated prejudice); In re B.T., 154 S.W.3d 200, 205 (Tex.App.-Fort Worth 2004, no pet.); see also Wall v. Dep't of Family Servs., 173 S.W.3d 178 (Tex.App.-Austin 2005, no pet.); In re S.P., 168 S.W.3d 197, 201-02 (Tex.App.-Dallas 2005, no pet.); In re T.A.C.W., 143 S.W.3d 249, 251 (Tex.App.-San Antonio 2004, no pet.); In re M.G.D., 108 S.W.3d at 516; In re K.M., No. 07-04-0442-CV, 2004 WL 2826851, at *2, 2004 WL 2826851 (Tex.App.-Amarillo Dec.8, 2004, no pet.).
[25] TEX. FAM.CODE ANN. § 263.405(i).
[26] See In re E.A.R., 201 S.W.3d 813, 814-15 & n. 2 (Tex.App.-Waco 2006, no pet.) (Vance, J., concurring) (quoting HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 409, 79th Leg., R.S. (2005)).
[27] Id.
[28] State v. Windham, 837 S.W.2d 73, 78, n. 4 (Tex. 1992).
[29] See TEX.R.APP. P. 44.1(a) (defining harmful error in civil cases as error that probably resulted in an improper judgment or that "probably prevented the appellant from properly presenting the case in the court of appeals").
[30] Accord, In re S.K.A., 236 S.W.3d 875, 887 (Tex.App.-Texarkana 2007, pet. filed) (holding it necessary to address constitutional due process complaint as to section 263.405(i), which would otherwise prevent court from addressing issues that might be dispositive of appeal).
[31] TEX GOV'T CODE ANN. § 311.021 (Vernon 2005); In re B.L.D., 113 S.W.3d at 352.
[32] See Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex.2003); Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n, 74 S.W.3d 377, 381 (Tex.2002). If possible, we "interpret legislative enactments in a manner to avoid constitutional infirmities." Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 629 (Tex. 1996).
[33] See In re T.R.F., 230 S.W.3d 263, 264-65 (Tex.App.-Waco 2007, pet. filed) (collecting cases expressing due process concerns as to section 263.405(i)). However, two courts have now held section 263.405(i) violates due process as applied to the circumstances presented by those cases. See In re D.M., 244 S.W.3d 397, 417 (Tex.App.-Waco 2007, no pet. h.) (op. on reh'g) (holding statute as applied to indigent mother violated her due process rights); In re S.K.A., 236 S.W.3d at 894 (same).
[34] TEX. CONST. art. II, § 1.
[35] See Armadillo Bail Bonds v. State, 802 S.W.2d 237, 239 (Tex.Crim.App. 1990) (adopting undue interference test); Rose v. State, 752 S.W.2d 529, 535 (Tex.Crim.App. 1987) (same); Meshell, 739 S.W.2d at 252 (same); Ex parte Giles, 502 S.W.2d 774, 780 (Tex. Crim.App.1973) (analyzing assumption of power more properly attached to another branch).
[36] Ex parte Giles, 502 S.W.2d at 780.
[37] Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025, 1035 (1934). The 1824 constitutions of both Mexico and the State of Coahuila and Texas contained similar language, as did the constitution of the Republic of Texas. Harold H. Bruff, Separation of Powers Under the Texas Constitution, 68 TEX. L.REV. 1337, 1340-41 & nn. 24, 26 (1990).
[38] TEX. CONST. art. V, § 1(1).
[39] Id. In other words, the Texas constitution also grants the legislature the ability to establish "such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof. . . ." Id.
[40] TEX. CONST. art. V, § 6(a).
[41] Id.
[42] Tune v. Tex. Dep't of Pub. Safety, 23 S.W.3d 358, 361 (Tex.2000) (jurisdiction vested in court of appeals by virtue of general constitutional grant where statute, granting appeal from denial of handgun license to justice court and then to county court at law, was silent as to grant of further right of appeal to courts of appeals).
[43] See TEX. FAM.CODE ANN. § 109.002(a) (providing that appeals from final orders in termination suits shall be "as in civil cases generally"); see also In re E.A.R., 201 S.W.3d at 815 (Vance, J., concurring).
[44] Cf. In re E.A.R., 201 S.W.3d at 815 (Vance, J., concurring) (stating "right to appeal" in termination cases is statutory, not constitutional).
[45] See Tune, 23 S.W.3d at 360 (stating constitution grants courts of appeals general jurisdiction over all cases specified in art. V, § 6); see also Dean, Rule-Making in Texas, 20 ST. MARY'S L.J. 139, 152 (1988).
[46] See TEX. CONST. art. V, § 6, and the general enabling legislation, TEX. GOV'T CODE ANN. § 22.220(a) (Vernon 2004) ("Each court of appeals has appellate jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction when the amount in controversy or the judgment rendered exceeds $100, exclusive of interest and costs."); TEX. CIV. PRAC. & REM.CODE § 51.012 (Vernon 1997) (same).
[47] See, e.g., Pattison v. Spratlan, 539 S.W.2d 60 (Tex.), cert. denied, 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1976); DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944), cert. denied, 325 U.S. 862, 65 S.Ct. 1196, 89 L.Ed. 1983 (1945); see also former TEX. FAM.CODE § 11.19(a), Act of May 25, 1973, 63rd Leg., R.S., § 11.19(a), 1973 Tex. Gen. Laws 1419-20 (stating appeals in suit affecting parent-child relationship shall be as "in civil cases generally . . ."), repealed by Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 282.
[48] Craft v. Craft, 579 S.W.2d 506, 509 (Tex. Civ.App.-Dallas 1979) (stating provisions of subsection allowing appeal from an order entered under chapter 15 of former family code, governing termination of the parent-child relationship, "like many other provisions of the Code, declare the law as it previously existed") (emphasis added), writ ref'd n.r.e., 580 S.W.2d 814 (Tex. 1979). And final orders "would be appealable anyway under article 2249 [general enabling legislation]." Id. (emphasis added); see also McKnight, Commentary on the Texas Family Code, Title 1, 5 TEX. TECH. L.REV. 281, 407 (1974).
[49] TEX. CONST. art. V, § 6(a).
[50] See Harbison v. McMurray, 138 Tex. 192, 158 S.W.2d 284, 287 (1942) (appellate jurisdiction subject to control by legislature but only "within constitutional limitations"); Langever, 124 Tex. 80, 76 S.W.2d at 1029 (legislature authorized to "pass such laws as may be necessary to carry into effect the provisions of this Constitution," subject to limitations on the legislature's own powers contained elsewhere in the constitution).
[51] State Bd. of Ins. v. Betts, 158 Tex. 83, 308 S.W.2d 846, 851 (1958) (emphasis added).
[52] In re M.R.J.M., 193 S.W.3d at 676, n. 26 (citing Sultan v. Mathew, 178 S.W.3d 747, 752 (Tex.2005)); see also Seale v. McCallum, 116 Tex. 662, 287 S.W. 45, 47 (1926) (holding legislature had power to limit jurisdiction of courts of appeals in primary election contests); Tune, 23 S.W.3d at 362 (holding legislature limited courts of appeals' jurisdiction to causes in which amount in controversy exceeds $100); Maddox v. Covington, 87 Tex. 454, 29 S.W. 465, 466 (1895) (holding legislature acted within its constitutional power in limiting jurisdiction of supreme court under identical language of TEX. CONST. art. V, § 3).
[53] In re M.R.J.M., 193 S.W.3d at 676, n. 26.
[54] Williams v. State, 707 S.W.2d 40, 45 (Tex. Crim.App.1986) (holding statute unconstitutional that required ninety-five percent remittitur of amount of bond if defendant was produced within two years after judgment, thus altering or nullifying final judgment rendered by a court); see also Harbison, 138 Tex. 192, 158 S.W.2d at 287; Langever, 124 Tex. 80, 76 S.W.2d at 1029.
[55] In re M.S., 115 S.W.3d 534, 546 (Tex.2003) (noting Texas already provides the right of appeal from a judgment involving parental rights termination, citing family code section 109.002).
[56] Id. "[I]t is now fundamental that, once established, [avenues of appellate review] must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." Id. at 547 (quoting M.L.B. v. S.L.J., 519 U.S. 102, 111, 117 S.Ct. 555, 561, 136 L.Ed.2d 473 (1996)).
[57] The supreme court has, however, also held that the right of appeal is protected by the open courts provision of the constitution, article I, section 13. Doctors Hosp. Facilities v. Fifth Court of Appeals, 750 S.W.2d 177, 179 (Tex. 1988) (recognizing right of access to an appellate tribunal is a substantial right protected against arbitrary and unreasonable abrogation); Dillingham v. Putnam, 109 Tex. 1, 14 S.W. 303, 304 (1890).
[58] Three of the Department's cases involved only interpreting the statutes in question that limited appellate jurisdiction. See Sultan, 178 S.W.3d at 749 (interpreting statute declaring judgment of county court on de novo appeal from small claims court "final"); Tune, 23 S.W.3d at 361 (interpreting statute establishing minimum amount in controversy for appeal from county court); Seale, 116 Tex. 662, 287 S.W. at 47 (holding statute declaring judgment of district court in primary election contest to be "final," precluding appeal). A fourth case dealt with the statutory limitation of jurisdiction of courts of civil appeals to "civil cases," which is also contained in the constitution. Harbison, 138 Tex. 192, 158 S.W.2d at 287.
[59] 85 S.W.3d 283, 286-87 (Tex.Crim.App. 2002).
[60] Id. The court thus avoided the issue of whether the legislature had unduly interfered with the powers of the appellate courts. The court of appeals in Rushing had held that the statute violated the Separation of Powers Clause by denying a court of appeals the power to review whether the trial court had jurisdiction, which it characterized as an "area of minimum functional integrity of the courts." Rushing v. State, 50 S.W.3d 715, 723-25 (Tex.App.-Waco 2001) (quoting from Armadillo Bail Bonds, 802 S.W.2d at 240-41).
[61] Id.
[62] See id. at 286 (citing Marin v. State, 851 S.W.2d 275, 278 (Tex.Crim.App. 1993)); see also TEX. GOV'T CODE ANN. § 22.008; TEX.CODE CRIM. PROC. art. 44.33 (providing court of criminal appeals shall make rules of posttrial and appellate procedure as to criminal actions "not inconsistent with this code"); see also Pope & McConnico, Texas Civil Procedure Rule Making, 30 BAYLOR L.REV. 5 at 10-11 & n. 38 (1978) (noting legislature retained rule making power in criminal cases, unlike civil cases in which such power has been fully conferred on supreme court).
[63] In In re S.J.G., we held that section 263.405(b)'s requirement that an appellant must file a statement of points not later than fifteen days after judgment is procedural and not jurisdictional. 124 S.W.3d at 240. When the legislature thereafter added section 263.405(i) directing courts of appeals not to consider issues not listed in a timely filed statement of points, it did not alter the language of section 263.405(b).
[64] See TEX.R. CIV. P. 324(a); TEX.R.APP. P. 33.1.
[65] See In re City of Georgetown, 53 S.W.3d 328, 332 & n. 2 (Tex.2001); Mo. Pac. R.R. Co. v. Cross, 501 S.W.2d 868, 872 (Tex.1973); Freeman v. Freeman, 160 Tex. 148, 327 S.W.2d 428, 433 (1959).
[66] N.N. v. Inst. for Rehab. & Research, 234 S.W.3d 1, 6 (Tex.App.-Houston [1st Dist.] 2006, no pet. h.); see Sherrill v. Estate of Plumley, 514 S.W.2d 286, 287 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.) (holding court-promulgated rules have force and effect of supreme court opinions); Beach v. Runnels, 379 S.W.2d 684, 686 (Tex.Civ. App.-Dallas 1964, writ ref'd).
[67] TEX.R.APP. P. 47.1.
[68] See TEX.R.APP. P. 33.1.
[69] See Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641, 646 (1933) (defining appellate judicial power as "the power and authority conferred on a superior court to rehear and determine  that is, to review  causes which have been tried in inferior courts.") (emphasis added).
[70] Meshell, 739 S.W.2d at 255 (emphasis added).
[71] Section 22.004(a) of the government code vests the supreme court with full rulemaking authority in civil cases, subject to the limitation that the rules not abridge, enlarge, or modify the substantive rights of a litigant. See TEX. GOV'T CODE ANN. § 22.004(a) (Vernon Supp. 2007). Such rules shall remain in effect "unless disapproved by the legislature." Id. But see Dean, Rule-Making in Texas, 20 ST. MARY'S L.J. at 141 n. 9, 161 nn. 101-02 (noting legislature has never exercised power of disapproval). Section 31 of article V of the constitution, like former section 25, limits the supreme court's power to promulgate rules "not inconsistent with the laws of the state." Tex. Const. art. V § 31. This has been interpreted to mean that, in the event of a conflict between a statute and a rule, the statute prevails unless the rule was adopted subsequent to the statute. Johnstone v. State, 22 S.W.3d 408, 409 (Tex.2000); Few v. Charter Oak Fire Ins. Co., 463 S.W.2d 424, 425 (Tex.1971) (construing identical language in former article V, section 25). Even assuming there is a conflict here, we do not need to determine its effect because we hold the statute is void.
[72] Langever, 124 Tex. 80, 76 S.W.2d at 1029.
[73] 739 S.W.2d at 254-55.
[74] Id.
[75] Contrary to the Department's brief, the Meshell court considered the county attorney part of the judicial branch, not the executive. Id. at 253.
[76] Id. at 256.
[77] Id.
[78] 707 S.W.2d at 47.
[79] Id. ("[T]he Legislature has no power to alter a final judgment rendered by the court in a bond forfeiture. Otherwise, the power of the judicial branch would be a mockery, subject to the whim of the Legislature. The finality of judgments would not exist and courts would be Legislative forums.").
[80] 802 S.W.2d at 239 (also applying former article V, section 25 of the Texas constitution granting rulemaking power both to the supreme court and the legislature).
[81] Id. at 240 (quoting A. Leo Levin & Anthony G. Amsterdam, Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision, 107 U. PA. L.REV. 1, 31-32 (1958)).
[82] Id. at 241; see also State v. Williams, 938 S.W.2d 456, 458 (Tex.Crim.App.1997) (citing both Meshell and Armadillo Bail Bonds in considering the validity of a legislatively enacted procedural rule under current section 31 of article V of the constitution).
[83] Armadillo Bail Bonds, 802 S.W.2d. at 240 (quoting Coate v. Omholt, 203 Mont. 488, 662 P.2d 591 (1983), and citing A. Leo Levin & Anthony G. Amsterdam, Legislative Control Over Judicial Rule-Making, 107 U. PA. L.REV. at 31-32).
[84] 802 S.W.2d at 241 (emphasis in original).
[85] Id.; see also Williams, 938 S.W.2d at 458. Nor may the legislature exercise judicial powers under the guise of its retained power to regulate and restrict the courts' jurisdiction. Langever, 76 S.W.2d at 1036 (noting legislature may not set aside the construction of a law already applied by courts to actual cases, compel courts to adopt a particular construction of a law, set aside or alter judgments, nor compel courts to grant new trials).
[86] TEX.R.APP. P. 26.1(b); TEX. FAM.CODE ANN. § 263.405(a).
[87] TEX.R. CIV. P. 329b(a).
[88] TEX.R.APP. P. 26.1(b)
[89] TEX. FAM.CODE ANN. § 263.405(f) (altering time record would otherwise be due to ten days after notice of appeal is filed as stated in TEX.R.APP. P. 35.1(b)).
[90] TEX.R.APP. P. 38.6(a).
[91] HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 409, 79th Leg., R.S. (2005).
[92] We note that the "statement of points" required to be filed by section 263.405(b) is not a motion, request, or other pleading seeking any relief from the trial court. Although section 263.405(b) requires that the statement of points be presented to the trial court, no provision is made for a hearing or a ruling by that court.
[93] See, e.g., TEX.R. CIV. P. 324 (requiring as prerequisite for appeal a point in a motion for new trial for certain complaints); TEX.R.APP. P. 33.1(a) (requiring timely request, objection, or motion, and explicit or implicit ruling by trial court); TEX.R. EVID. 103(a)(1) (requiring preservation of error as to admission or exclusion of evidence by "timely" objection with an offer of proof as to evidence claimed to be wrongfully excluded). Numerous other rules of civil procedure require objection at appropriate stages of pretrial, trial, and posttrial proceedings in order to preserve error for appeal, including defects in pleadings, objections to written discovery, challenges for cause, objections and requests as to jury charge and omissions from charge, directed verdicts and motions for judgment n.o.v. for legal insufficiency, and the types of error for which motions for new trial are required to preserve error. See, e.g., TEX.R. CIV. P. 90, 193.2, 229, 268, 274, 279, 301, and 324(a).
[94] Smirl v. Globe Labs., Inc., 144 Tex. 41, 188 S.W.2d 676 (1945) (distinguishing rules promulgated by supreme court from former statutes, stating a court "in its discretion" need not in all cases dismiss an appeal for failure to observe and comply with the rules prescribed for bringing a case before the appellate courts); Tex. Employer's Ins. Ass'n v. Evans, 117 Tex. 113, 123, 298 S.W. 516, 520 (1927) ("The office of a rule of procedure is to facilitate, rather than hinder, a speedy and final determination of all lawsuits in that way which will secure to litigants their substantial rights. . . . ").
[95] See Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex.2005) (reiterating that the appellate rules "are designed to resolve appeals on the merits and we must interpret and apply them whenever possible to achieve that aim"); Bennett, 96 S.W.3d at 229-30 (same); Verburgt v. Dorner, 959 S.W.2d 615, 616 (Tex. 1997) (noting "policy embodied in our appellate rules that disfavors disposing of appeals on harmless procedural defects" and holding courts of appeals must construe rules liberally so that the right to appeal is not lost "by imposing requirements not absolutely necessary to effect the purpose of a rule"); Gallagher v. Fire Ins. Exch., 950 S.W.2d 370, 370-71 (Tex.1997) (reiterating "commitment to ensuring that courts do not unfairly apply the rules of appellate procedure to avoid addressing a party's meritorious claim").
[96] Doctors Hosp. Facilities, 750 S.W.2d at 179.
[97] See, e.g., In re M.N., 230 S.W.3d 248, 249 (Tex.App.-Eastland 2007, pet. filed) (questioning due process implications of section 263.405(i)); see also In re R.J.S., 219 S.W.3d 623, 627-28 (Tex.App.-Dallas 2007, pet. denied) (noting section 263.405(b) is "trap for the unwary"); In re D.M., 244 S.W.3d 397, 412, n. 2 (Tex.App.-Waco, 2007, no pet. h.) (Vance, J., dissenting) (collecting decisions of seven other courts of appeals questioning due process implications of sections 263.405(b) and (i)); In re R.M., No. 04-07-00048-CV, ___ S.W.3d ___, ___, 2007 WL 1988149, at *1 (Tex.App.-San Antonio, July 11, 2007, pet. denied) (questioning practical effects and constitutional implications of section 263.405(i) and urging legislature to revisit scope of statute); In re R.C., 243 S.W.3d 674, 677 (Tex. App.-Amarillo 2007, no pet. h.) (Quinn, J., concurring) (same).
[98] See Armadillo Bail Bonds, 802 S.W.2d at 240 ("[W]hen cases shall be decided and the manner in which they shall be decided is a matter solely for the judicial branch of government." (emphasis added)); see also A. Leo Levin & Anthony G. Amsterdam, Legislative Control Over Judicial Rule-Making, 107 PA. L.REV. at 31-32 (collecting cases holding that any statute that moves so far into realm of judicial activity "as to dictate to a judge how he shall judge . . . clearly offends the constitutional scheme of the separation of powers and will be held invalid") (emphasis added).
[99] Because we conclude that Betty's third issue should be sustained in part, we need not consider her fourth issue complaining of violation of due process. See TEX.R.APP. P. 47.1.
[100] Stevie pleaded guilty to reckless injury to a child and was incarcerated at the time of the final hearing.
[101] See In re J.A., No. 02-05-00454-CV, 2006 WL 3114434, at *9 (Tex.App.-Fort Worth Nov. 2, 2006, no pet.) (mem.op.).
[102] Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
[103] Id.
[104] In re Barber, 982 S.W.2d 364, 365 (Tex. 1998) (orig. proceeding).
[105] Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex.2002).
[106] See TEX. FAM.CODE. ANN. § 263.401(b).
[107] In re J.A., 2006 WL 3114434, at *9 (presuming evidence supported trial court's ruling and holding trial court did not abuse its discretion in denying a motion for extension of dismissal date where appellant failed to provide record of hearing).
[108] See In re A.S.J., No. 04-06-00051-CV, 2006 WL 1896335, at *2 (Tex.App.-San Antonio July 12, 2006, no pet.) (mem.op.) (holding appellants could not show abuse of discretion under section 263.401(b) where they "failed to provide any evidence of an extraordinary circumstance that would warrant an extension of time").
[1] TEX. CONST. art. II, § 1.
[2] In re B.L.D., 113 S.W.3d 340, 349 (Tex. 2003), cert. denied by Dossey v. Tex. Dep't of Protective & Regulatory Servs., 541 U.S. 945, 124 S.Ct. 1674, 158 L.Ed.2d 371 (2004).
[3] Maj. op. at 647-48; see In re A.R., No. 02-03-00235-CV, 2004 WL 40627, at *1 (Tex. App.-Fort Worth Jan. 8, 2004, pet. denied) (mem.op.).
[4] See TEX. FAM.CODE ANN. § 109.002 (Vernon 2002); see also Sultan v. Mathew, 178 S.W.3d 747, 752 (Tex.2005) (stating that legislature has power to restrict right to appeal; open courts provision does not guarantee right to appeal); accord Doleac v. Michalson, 264 F.3d 470, 492-93 (5th Cir.2001) (holding that there is no due process right to appellate review in U.S. Constitution); Able v. Bacarisse, 131 F.3d 1141, 1143 (5th Cir.1998) (noting that "the right to appeal is a statutory right, not a constitutional right").
[5] TEX. CONST. art. V, § 6(a); see Seale v. McCallum, 116 Tex. 662, 667, 287 S.W. 45, 47 (1926) (stating that legislature had power to limit jurisdiction of courts of appeals in primary election contests); Maddox v. Covington, 87 Tex. 454, 459, 29 S.W. 465, 466 (1895) (stating that legislature acted within its constitutional power in limiting jurisdiction of supreme court under identical language of Texas Constitution article V, section 3).
[6] Seale, 116 Tex. at 667, 287 S.W. at 47.
[7] Sultan, 178 S.W.3d at 752.
[8] TEX. FAM.CODE ANN. § 263.405(a), (b), (i) (Vernon 2002 & Supp. 2006) (emphasis added). Effective for cases filed after June 16, 2007, the Legislature amended section 263.405(b) to add a requirement that a party intending to request a new trial "must file a request not later than 15 days after the date a final order is signed." Act of May 21, 2007, 80th Leg., R.S., ch. 526, §§ 2, 6, 2007 Tex. Sess. Law. Serv. 931, 931-32 (Vernon) (to be codified as an amendment of TEX. FAM.CODE ANN. § 263.405(b)). The amended version is not applicable to this case. Id.
[9] TEX. FAM.CODE ANN. § 263.405(a), (b), (i).
[10] Id. § 263.405(i).
[11] Maj. op. at 630-31, 644-45; see TEX.R.APP. P. 33.1(a).
[12] Maj. op. at 643-46.
[13] See Ruiz v. Conoco, Inc., 868 S.W.2d 752, 757-58 (Tex. 1993) (upholding and applying procedure mandated by Texas's venue statute notwithstanding the fact that it was deemed by the court to be "fundamentally flawed"). Even if we had this discretion, the majority's conclusion that section 263.405(i) does not expedite the appellate process is belied by data within this court's own records showing that within the last two fiscal years, the average disposition rate for termination appeals involving one or more issues that were dismissed due to noncompliance with the procedures of section 263.405(b) is 26% faster than the average rate of disposition for other termination appeals. Case Management System, State of Texas Office of Court Administration (Jan. 4, 2008) (on file with court). Thus, the Legislature's primary goal of disposing of appeals "with the least possible delay" has been achieved by the procedures provided by section 263.405 in appeals filed in this court. HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 409, 79th Leg. R.S. (2005); see TEX. FAM.CODE ANN. § 263.405(a).
[14] Maj. op. at 637 (quoting State Bd. of Ins. v. Betts, 158 Tex. 83, 90, 308 S.W.2d 846, 851-52 (1958)) (emphasis added).
[15] Maj. op. at 642.
[16] See id. at 642-45.
[17] This distinguishes section 263.405 from the Speedy Trial Act that the court of criminal appeals found to be unconstitutional in Meshell v. State, 739 S.W.2d 246 (Tex.Crim.App. 1987), a case on which the majority heavily relies. According to the court in Meshell, the Act was expressly directed at controlling a "judicial" function  prosecutorial preparation and readiness for trial. Id. at 255. The court held that the Act violated the separation of powers clause not because it intruded into the prosecutor's discretion to prepare for trial, which the court said was necessary to enforce a defendant's constitutional right to a speedy trial, but because it did so without taking into account factors assuring the speedy "commencement of trial," such as a defendant's assertion of his right to a speedy trial. Id. at 256. Thus, the Act encroached upon a prosecutorial function "without the authority of an express constitutional provision." Id. Here, not only is there no intrusion into our power to decide issues that are preserved in accordance with the procedural requirements of section 263.405, but there is an express constitutional provision that empowers the Legislature to regulate and restrict the right of appellate review in termination cases. See TEX. CONST. art. V, § 6(a); Sultan, 178 S.W.3d at 752; Seale, 116 Tex. at 667, 287 S.W. at 47.
[18] 193 S.W.3d 670 (Tex.App.-Fort Worth 2006, no pet.) (en banc).
[19] Id. at 675. The issue presented here is much different than the potential issue we were confronted with in In re M.R.J.M., where, notwithstanding the provision in section 263.405(g) requiring an indigent parent to appeal a trial court's frivolousness finding with only the record of the frivolousness hearing, we ordered that a free reporter's record of the evidence admitted at trial to be prepared and filed to enable us to exercise our constitutionally assigned judicial power of reviewing factual sufficiency complaints. Id. at 672-76; see TEX. FAM.CODE ANN. § 263.405(g). Unlike section 263.405(g), there is nothing in section 263.405(i) that would potentially hinder us in exercising our constitutionally assigned power to review issues that are appealed in accordance with the procedural requirements of the statute.
[20] See supra at 649-50, 651, 651 n. 17.
[21] Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex.Crim.App. 1990); Meshell, 739 S.W.2d at 246; Williams v. State, 707 S.W.2d 40 (Tex.Crim.App.1986).
[22] Maj. op. at 645.
[23] The majority does not reach Betty's complaint that subsections (b) and (i) of section 263.405 violate her due process rights under the United States Constitution as applied to her case, and neither do I. Two of our sister courts, however, have recently decided that question, and both courts held that the statute as applied did violate the due process rights of the appellants in those cases. See In re D.M., 244 S.W.3d 397, 415 (Tex.App.-Waco 2007, no pet.) (op. on reh'g); In re S.K.A., 236 S.W.3d 875, 894 (Tex.App.-Texarkana 2007, pet. filed). Both D.M. and S.K.A. involved late appointments of counsel that hindered or prevented the appellants from filing a timely statement of points. D.M., 2007 WL 2325815, at *6; S.K.A., 236 S.W.3d at 885. In this case, however, Betty was represented by appointed counsel during the critical period before the deadline for filing her statement of points, and her counsel filed a timely statement of points raising insufficiency points, which she did not assert in this appeal.
[24] See TEX. FAM.CODE ANN. § 263.405(i); In re J.J., No. 05-06-01472-CV, 2008 WL 223841, at *7 (Tex.App.-Dallas Jan.29, 2008, no pet. h.) (mem. op. on reh'g) (refusing to consider points not contained in a timely filed statement of points alone or in combination with a motion for new trial); In re A.A.A., No. 01-07-00160-CV, 2008 WL 201033, at *11 (Tex. App.-Houston [1st Dist.] Jan. 24, 2008, no pet. h.) (op. on reh'g) (same); In re D.L.G., No. 05-07-00787-CV, 2007 WL 4375793, at *1 (Tex.App.-Dallas Dec. 17, 2007, no pet. h.) (mem.op.) (same); In re A.R., No. 04-07-00292-CV, 2007 WL 4180208, at *1-2 (Tex. App.-San Antonio Nov.28, 2007, no pet.) (mem.op.) (same); In re S.M.T., No. 09-06-00525-CV, 2007 WL 4208743, at *1, 3-4 (Tex. App.-Beaumont Nov.29, 2007, no pet.) (same); In re N.Z.B., No. 13-07-00316-CV, 2007 WL 3225886, at *1 (Tex.App.-Corpus Christi Nov.1, 2007, no pet.) (mem.op.) (same); Mikowski v. Dep't of Family & Protective Servs., No. 01-07-00011-CV, 2007 WL 3038099, at *2-3 (Tex.App.-Houston [1st Dist.] Oct. 18, 2007, no pet.) (mem.op.) (same); In re C.R., No. 11-07-00060-CV, 2007 WL 2948916, at *1 (Tex.App.-Eastland Oct.11, 2007, no pet.) (mem.op.) (same); In re K.C.B., 240 S.W.3d 454, 455 (Tex.App.-Amarillo 2007, pet. filed) (same); In re F.C.G., No. 11-07-00068-CV, 2007 WL 2823685, at *1 (Tex.App.-Eastland Sept.27, 2007, pet. filed) (mem.op.) (same); In re T.R.F., No. 10-07-00086-CV, 2007 WL 2325818, at *1 (Tex. App.-Waco Aug. 15, 2007, no pet.) (mem.op.) (same); In re L.F.B., No. 06-07-00010-CV, 2007 WL 2001643, at *4 (Tex.App.-Texarkana July 12, 2007, pet. denied) (mem.op.) (same); In re R.M., No. 04-07-00048-CV, ___ S.W.3d ___, ___-___, 2007 WL 1988149, at *1-2 (Tex.App.-San Antonio July 11, 2007, pet. denied) (same); In re K.A.J., No. 10-07-00110-CV, 2007 WL 1704815, at *2 (Tex.App.-Waco June 13, 2007, no pet.) (mem.op.) (same); In re I.C., No. 04-06-00846-CV, 2007 WL 1608971, at *1 (Tex.App.-San Antonio June 6, 2007, no pet.) (mem.op.) (same); In re T.T., 228 S.W.3d 312, 316-17 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (same); In re B.S., No. 09-06-00293-CV, 2007 WL 1441273, at *2, 4-5 (Tex.App.-Beaumont May 17, 2007, no pet.) (mem.op.) (same); In re M.D., No. 05-06-00779-CV, ___ S.W.3d ___, ___, 2007 WL 1310966, at *1 (Tex.App.-Dallas May 7, 2007, no pet.) (same); In re F.D.D., No. 04-06-00692-CV, 2007 WL 1267235, at *1 (Tex.App.-San Antonio May 2, 2007, no pet.) (mem.op.) (same); In re S.C., No. 06-07-00051-CV, 2007 WL 1223880, at *1 (Tex. App.-Texarkana Apr.27, 2007, no pet.) (mem. op.) (same); In re R.J.S., 219 S.W.3d 623, 626-27 (Tex.App.-Dallas 2007, pet. denied) (same); In re R.M.R., 218 S.W.3d 863, 864 (Tex. App.-Corpus Christi 2007, no pet.) (same); In re J.F.R., No. 09-06-00115-CV, 2007 WL 685640, at *1-2 (Tex.App.-Beaumont Mar.8, 2007, no pet.) (mem.op.) (same); In re M.D.L.E., No. 09-05-00514-CV, 2007 WL 685562, at *3 (Tex.App.-Beaumont Mar.8, 2007, no pet.) (mem.op.) (same); Pool v. Tex. Dep't of Family & Protective Servs., 227 S.W.3d 212, 215 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (same); Adams v. Tex. Dep't of Family & Protective Servs., 236 S.W.3d 271, 278 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (same); In re R.A.P., No. 14-06-00109-CV, 2007 WL 174376, at *1 (Tex.App.-Houston [14th Dist.] Jan. 25, 2007, pet. denied) (mem.op.) (same); In re J.H., No. 12-06-00002-CV, 2007 WL 172105, at *1 (Tex.App.-Tyler Jan.24, 2007, no pet.) (mem.op.) (same); In re C.B.M., 225 S.W.3d 703, 706 (Tex.App.-El Paso 2006, no pet.); In re N.L.G., No. 06-06-00066-CV, 2006 WL 3626956, at *1, 3, 5 (Tex.App.-Texarkana Dec. 14, 2006, pet. denied) (mem.op.) (same); In re R.W., No. 06-06-00106-CV, 2006 WL 3391420, at *1 (Tex. App.-Texarkana Nov.22, 2006, no pet.) (mem. op.) (same); In re S.B., 207 S.W.3d 877, 881-82 (Tex.App.-Fort Worth 2006, no pet.) (same); In re A.H.L., 214 S.W.3d 45, 53 (Tex. App.-El Paso 2006, pet. denied) (same); In re C.M., 208 S.W.3d 89, 92 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (same); In re E.J.W., No. 04-06-00219-CV, 2006 WL 2871570, at *1 (Tex.App.-San Antonio Oct.11, 2006, no pet.) (mem.op.) (same); In re H.H.H., No. 06-06-00093-CV, 2006 WL 2820063, at *1 (Tex.App.-Texarkana Oct.4, 2006, no pet.) (mem.op.) (same); In re D.A.R., 201 S.W.3d 229, 231 (Tex.App.-Fort Worth 2006, no pet.) (same); In re E.A.R., 201 S.W.3d 813, 813-14 (Tex.App.-Waco 2006, no pet.) (same); In re A.C.A., No. 13-05-00610-CV, 2006 WL 1172331, at *1 (Tex.App.-Corpus Christi May 4, 2006, no pet.) (mem.op.) (same); In re S.E., 203 S.W.3d 14, 15 (Tex. App.-San Antonio 2006, no pet.) (same); In re J.M.S., No. 06-05-00139-CV, 2005 WL 3465518, at *1 (Tex.App.-Texarkana Dec. 20, 2005, no pet.) (mem.op.) (same); see S.M.T., 241 S.W.3d at 652, 654-55 (refusing to consider appellate points where statement of points was untimely filed); In re F.A., No. 13-07-00438-CV, 2007 WL 3293664, at *1-2 (Tex.App.-Corpus Christi Nov.8, 2007, no pet.) (mem.op.) (same); In re J.L.W.M., No. 07-07-00043-CV, 2007 WL 2962933, at *1 (Tex. App.-Amarillo Oct.11, 2007, no pet.) (mem. op.) (same); In re T.R.F., 230 S.W.3d 263, 265 (Tex.App.-Waco 2007, pet. filed) (same); In re M.N., 230 S.W.3d 248, 249-50 (Tex.App.-Eastland 2007, pet. filed) (same); In re R.C., 243 S.W.3d at 675-77 (Tex.App.-Amarillo Apr.25, 2007, no pet.) (same); In re K.R., No. 09-06-0056-CV, 2007 WL 117738, at *1 (Tex.App.-Beaumont Jan. 18, 2007, pet. denied) (mem. op.) (same); In re C.R., No. 02-06-0099-CV, 2006 WL 3114468, at *1 (Tex.App.-Fort Worth Nov. 2, 2006, no pet.) (mem.op.) (same); Coey v. Tex. Dep't of Family & Protective Servs., No. 03-05-00679-CV, 2006 WL 1358490, at *2 (Tex.App.-Austin May 19, 2006, no pet.) (mem.op.) (same); see also In re J.W.H., 222 S.W.3d 661, 662 (Tex.App.-Waco 2007, no pet.) (refusing to consider points where statement of points was not sufficiently specific); Cisneros v. Tex. Dep't of Family & Protective Servs., No. 13-06-00321-CV, 2006 WL 3824939, at *1 (Tex.App.-Corpus Christi Dec. 29, 2006, no pet.) (mem.op.) (same); N.L.G., 2006 WL 3626956, at *1, 3, 5 (same); A.C.A., 2006 WL 1172331, at *1 (same).