

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-11-00137-CV**

IN THE INTEREST OF A.J.M.
AND E.A.M., CHILDREN

----------

FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY

----------

## OPINION ON APPELLANT'S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION[1]

----------

After granting appellant's motion for rehearing and motion for en banc reconsideration, we withdraw our prior opinion and judgment and rewrite this court's opinion to address appellant's first issue on its merits.

Appellant appeals from the trial court's judgment terminating his parental rights to daughters A.J.M. and E.A.M. In four issues, he complains that the trial court erred by denying his motion to extend the dismissal deadline and that the evidence is factually insufficient to support the termination findings. We hold that

---

[1]*See* Tex. R. App. P. 49.7.

appellant did not forfeit his issue on appeal regarding the trial court's denial of his motion to extend the dismissal deadline but that the trial court did not abuse its discretion in denying his motion. We also hold that the evidence is factually sufficient to support the endangerment and best interest findings. We therefore affirm the trial court's judgment.

**I. The trial court did not abuse its discretion by denying appellant's motion to extend the one-year dismissal deadline.**

In his first issue, appellant argues that the trial court erred by denying his motion to extend the mandatory statutory one-year dismissal date. Under former section 263.405(i) of the family code, the law in effect when the trial court rendered this judgment, appellant was required to raise this issue in his statement of points.[2] However, because we have held former section 263.405(i) to be facially invalid, we address his issue.[3]

Appellant argues that the trial court erred when it denied his motion to extend the dismissal date under family code section 263.401. *See* Tex. Fam. Code Ann. § 263.401(a), (b) (West 2008). In our original opinion, we incorrectly

---

[2]*See* Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332, *repealed by* Act of April 29, 2011, 82nd Leg., R.S., ch. 75, §§ 5, 8, 2011 Tex. Sess. Law Serv. 348, 349 (West); *In re J.H.G.*, 302 S.W.3d 304, 306 (Tex. 2010).

[3]*Compare In re D.W.*, 249 S.W.3d 625, 640, 645 (Tex. App.—Fort Worth 2008) (en banc), *pet. denied*, 260 S.W.3d 462 (Tex. 2008), *with J.H.G.*, 302 S.W.3d at 306 (applying former section 263.405(i) and holding that failure to assert denial of extension in statement of points on appeal barred appellate review where constitutionality of section not raised or presented).

held that appellant had forfeited this issue because he had not included this particular issue in his statement of points on appeal as required under former section 263.405(i). *In re A.J.M.*, No. 02-11-00137-CV, 2011 WL 5984540, at *1 (Tex. App.—Fort Worth Dec. 1, 2011, no pet.) (mem. op.); *see* Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (repealed 2011). The holding in our original opinion is incorrect because this court has previously held that former section 263.405(i) violates the Separation of Powers Clause of the Texas constitution in that it prevents an appellant from pursuing an issue on appeal that has been properly preserved in the trial court; thus, it unconstitutionally interferes with our constitutionally conferred power to review the issue on the merits on appeal. *D.W.*, 249 S.W.3d at 640, 645. Therefore, we have the power to review this issue on appeal.

Here, appellant moved to extend the dismissal deadline of the underlying termination suit for 108 days because he was still incarcerated in the Parker County jail and would not be released until shortly before the scheduled trial date of February 9, 2011. *See* Tex. Fam. Code. Ann. § 263.401. He specifically asked that the case be reset to October 7, 2011 so that after his release he could attend the trial and also complete the parenting class and other services required by his service plan.

First, we note that appellant preserved this issue for appeal by bringing his request to the trial court's attention by written motion dated January 11, 2011. *See* Tex. R. App. P. 33.1. Furthermore, appellant properly raised the issue on

3

appeal in his first issue: "The trial court erred by denying appellant's motion to extend the dismissal date."

Appellant's requested extension date of October 7, 2011 is within the 180-day permissible extension when counting from the Monday following the one-year anniversary of any temporary order appointing the Texas Department of Family and Protective Services (the Department) as managing conservator. *See* Tex. Fam. Code Ann. § 263.401(a). Section 263.401(b) allows the trial court to extend the dismissal deadline if the movant shows "extraordinary circumstances [that] necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b).

At the January 14, 2011 hearing on his motion for continuance, appellant claimed his incarceration had prevented his ability to comply with his service plan and his ability to show his willingness to work to get his children back. He also agreed that their current placement was not harmful and that the children were not readily adoptable at that time. Conversely, the children's ad litem testified that any delay in termination would delay an anticipated lengthy adoption, that she could not recommend returning the children to the parents regardless, and that incarceration was not an "extraordinary circumstance" justifying extension under the statute.

We review a trial court's decision to grant or deny an extension of the dismissal date under the abuse of discretion standard. *D.W.*, 249 S.W.3d at 647. The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child. Tex. Fam. Code Ann. § 263.401(b). The trial court is further directed to make such findings and include them in any order granting the extension, along with the new trial date and any further necessary temporary orders. *Id.*

Appellant attended the continuance hearing and the permanency hearing held at the same time, with trial counsel. At the end of the permanency hearing, the trial court found that appellant had "not demonstrated adequate and appropriate compliance with the service plan." The trial court further declared appellant to be the father of both children and named him a temporary possessory conservator. Moreover, the trial court found the guidelines for possession and access to the children were not in their best interest and granted appellant supervised visitation of one hour per week. Pursuant to section 263.306(a)(13), the trial court set the next dismissal date as April 11, 2011 and confirmed the February 9, 2011 trial date. Tex. Fam. Code Ann. § 263.306(a)(13) (West Supp. 2011).

In his brief on appeal, appellant argues that the trial court erred in failing to grant his extension. Appellant had said at the January 14 hearing that he might be released on January 28, 2011 or April 20, 2011 and argued to keep the

5

children in their current placement because they were "not immediately adoptable anyway." Thus, he contended that his incarceration, the search for a "suitable relative placement," and continuing the Department's managing conservatorship was in the children's best interest.

Notably, the children's ad litem attorney argued against an extension because of the children's long-term emotional and developmental needs. Both the ad litem and the Department's caseworker contended that visits with appellant had actually been detrimental to E.A.M. in particular.

This is all that appellant points to in support of either "extraordinary circumstances" or the children's alleged "best interest." The statute's clear preference is to complete the process within the one-year period. The legislature's use of the language, "unless the court has commenced a trial on the merits or granted an extension . . . the court shall dismiss . . .," is mandatory. *Id.* § 263.401(a); *see In re Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 492, 497 (Tex. App.—Fort Worth 2011, orig. proceeding). Furthermore, when section 263.401(a) is read with section 263.401(b)'s language—"the court may not retain"—it is clear that the legislature preferred and directed trial courts to complete their state-involved terminations by the one-year anniversary. *Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d at 497. We have already determined and held that the term "shall" is generally a mandatory term and that the exception in section 263.401(b) must be closely followed. *Id*. Because the statutory language prefers finality to suit and because we cannot say the trial

6

court abused its discretion in denying appellant's extension, we overrule appellant's first issue.

## II.   The evidence is factually sufficient to support the trial court's endangerment finding.

In his third issue, appellant contends that the evidence is factually insufficient to support the trial court's endangerment finding.   As we have explained in a similar case,

> Endangerment means to expose to loss or injury, to jeopardize. . . .
>
> . . . .
>
> . . . . Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act.  Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.
>
> To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury.  The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. . . .  As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being.

*In re J.W.*, No. 02-08-00211-CV, 2009 WL 806865, at *4 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (citations omitted).

Even though imprisonment standing alone does not constitute a continuing course of conduct that endangers the physical or emotional well-being of a child,

7

it is a factor that we may properly consider on the issue of endangerment. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533–34 (Tex. 1987); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.). The State is not required to show that incarceration was a result of a course of conduct endangering the child; it must show only that incarceration was part of such a course of conduct. *Boyd*, 727 S.W.2d at 533–34; *M.R.*, 243 S.W.3d at 819. When incarceration affects the parent's ability to care for his child, to provide safe living conditions, or to ensure her safety and well-being, then such incarceration can be a part of a course of continuing conduct. *See M.R.*, 243 S.W.3d at 819. Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being. *In re J.T.G.*, 121 S.W.3d 117, 133 (Tex. App.—Fort Worth 2003, no pet.).

Additionally, a parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct jeopardizing the child's physical or emotional well-being. *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). Also, even if a parent makes dramatic improvements before trial, "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices." *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Finally, a factfinder may infer from past conduct endangering the well-being of the child that similar conduct will recur if the child

8

is returned to the parent. *In re M.M.*, No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.).

Nikki Lepori, the CPS investigator, testified that the first CPS investigation of appellant's family occurred in August 2007. At that time, A.J.M. was barely three years old, and E.A.M. was about sixteen months old. The allegations were that appellant had sexually abused both little girls. The reporter, whose name Lepori could not recall, had allegedly seen appellant fondle A.J.M. Lepori testified that the allegations were ruled unable to determine because the girls were nonverbal. In the same referral, allegations of neglectful supervision of the children by their mother, E.J., and of physical abuse of A.J.M. by appellant were also raised. The reporter alleged that appellant had hit A.J.M. with his fist, had been seen shaking her, and had left bruises on her back and legs. In October 2008, another report of physical abuse was made. The allegations were ruled out, but a case was opened to provide services for the family. In December 2009, CPS received a report of physical neglect, which was ruled out.

Appellant was arrested and confined in December 2009. The children lived with their mother until her arrest and confinement on March 29, 2010. According to Lepori, soon thereafter, in April 2010, CPS received another report. At that time, both parents were still incarcerated. The girls were living with their paternal grandmother. E.A.M., who was three years old at the time, had been spotted running up and down Bankhead Highway, which Lepori testified is busy, going door-to-door asking for cigarettes. A.J.M.'s school had reported that she

9

had come to school in the same urine-soaked clothes two days in a row. When Lepori went to the paternal grandmother's home to investigate these neglect charges, the paternal grandmother gave her a 1999 doctor's note stating that she was permanently physically and mentally disabled. E.A.M., who had just turned four before the visit, and A.J.M., who was five years old, were unkempt and appeared not to have had baths for several days. Lepori got the impression that they were dressing themselves and taking care of their own hygiene, which, she testified, they were not old enough or mature enough to do. Lepori also noted that the girls were covered in what appeared to be insect bites. CPS removed the children for physical neglect and neglectful supervision.

Lepori answered, "Absolutely," when questioned whether appellant had engaged in conduct or knowingly placed the girls with persons who engaged in conduct which endangered their physical or emotional well-being. Lepori explained that appellant had chosen to break the law, risking and resulting in his incarceration and inability to care for his daughters and that he had also left them with an inappropriate caregiver, his mother. Lepori also testified that neither the parents nor the paternal grandmother appeared to have taken any steps to meet the children's developmental and emotional needs.

The girls' mother, E.J., who voluntarily relinquished her parental rights, admitted that appellant had been arrested during the girls' lives three to five times and that those arrests had taken him away from them "[o]verall a little."

E.J. also testified that appellant had told her that he was a registered sex offender and that he had committed the offense when he was fourteen. Appellant was thirty at the time of trial. E.J. did not know who the complainant was. Appellant testified that the complainant had been a twelve-year-old girl. A Parker County Sheriff's Office lieutenant, Mark Arnett, testified that the complainant had been appellant's mother, and appellant's adult probation officer testified that appellant had told him that the complainant had been appellant's mother. Appellant's mother refused to answer questions about whether appellant had "hurt" her when he was a teenager, claiming her Fifth Amendment right not to testify.

Appellant was in the Texas Youth Commission for the sexually assaultive conduct from 1994 to 2001 and is a registered sex offender. Arnett testified that appellant also had an extensive criminal history. Appellant admitted to psychologist Parnell Ryan that he had been arrested and jailed four or five times. Specifically, appellant told Ryan that he had been arrested for hot checks in 2001 and 2006, evading arrest in 2001, identity theft in 2008, and unlawful possession of a firearm in 2009. Appellant also testified that he pled guilty to harassment in 2007 but that his probation was revoked when he committed identity theft.

Included in the exhibits offered by the Department and admitted by the trial court are judgments of conviction. Petitioner's Exhibit 2 is a judgment dated June 28, 2010, that indicates that the trial court adjudicated appellant's guilt and convicted him of obtaining a controlled substance by fraud, sentenced him to five

years' confinement, and awarded credit for time served of approximately four months. That exhibit provides that the offense was committed in October 2003, which was before appellant's daughters were born. Petitioner's Exhibit 1 is a judgment of state jail conviction for fraudulent use or possession of identifying information. The judgment provides that appellant committed the offense on February 18, 2009, that he was sentenced to fifteen months' confinement on June 28, 2010, and that he had received about three months' credit for time served.

Petitioner's Exhibit 3 is an October 2009 motion to revoke appellant's community supervision in yet another felony case of fraudulent use or possession of identifying information on the basis of appellant's alleged commission of two new state jail felony forgery offenses within a month of being placed on community supervision. Petitioner's Exhibit 7 is a judgment granting that motion and revoking appellant's community supervison. The judgment, dated May 21, 2010, provides that the trial court sentenced appellant to serve fourteen months in state jail and awarded him about six months' credit for time served. The judgment also indicates that the offense was committed on February 18, 2009. Petitioner's Exhibit 4, a bond recommendation, states that appellant was arrested for being a felon in possession of a firearm on October 18, 2009, after officers found the gun in his home pursuant to a consensual search. Petitioner's Exhibit 6 is a May 2010 judgment of conviction for the felony offense of unlawful possession of a firearm by a felon. The judgment provides

that the offense occurred on September 18, 2009, that appellant was sentenced to three years' confinement, and that he received credit for time served of about six months. Finally, on April 22, 2010, appellant was found guilty of "Parent Contributing to Nonattendance" regarding A.J.M.'s absences from school and fined $584.00. Appellant was incarcerated at the time.

E.J. testified that she did not realize that appellant was a felon. She admitted that he had had a gun in the house before his most recent arrest.

Appellant's probation officer testified that appellant has a temper and is sometimes unstable. The probation officer also testified that he did not see appellant as a person who learns from his mistakes and predicted that he would continue to commit crimes. Ryan reported that appellant's intellectual function was in the low average range. Regarding appellant's social and emotional functioning, Ryan reported that appellant

> presented as someone with a history of antisocial behaviors beginning as an adolescent[,] which appear to not have been addressed[,] bringing about cyclical behaviors with strong consequences. [Appellant] seems willing to place himself in risky situations and practice irresponsible actions which prevent him from consistently meeting life responsibilities. [Appellant] appears able to identify right from wrong, yet his beliefs and values seem self-sabotaging. . . . [Appellant] has poor awareness of what he has to change in order to prevent himself from being in his current life situation. [Appellant] tends to minimize and justify his problematic behaviors . . . .
>
> . . . . [Appellant] does not seem to profit from past mistakes. [Appellant] appears to show poor judgment. . . .

13

Appellant appeared at trial with two black eyes. He had been in a fight with another inmate at the jail. He admitted that he had been incarcerated for about a third of E.A.M.'s life. When asked why he chose to continue to break the law, he answered, "People's got their own way of thinking." He admitted that he knew that it was a problem for him to have a gun in the house as a felon but contended that he kept the gun anyway because he was a repo man. Later, he testified that he would be able to be a repo man without a gun.

Appellant denied that he or anyone else in the home had ever abused the girls. He admitted that he had left the girls with his mother and E.J. when he went to jail and prison. He testified that he thought his mother was competent to take care of the girls. He also testified that she was the only person he had available to take care of the girls. When asked whether she could handle their behavioral issues as reported by the Department—they were difficult to control, they had nightmares, and they wet the bed—he answered that he did not know. He testified that there were no bug infestations when he lived with his mother.

Applying the appropriate standard of review, *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006), we hold that the trial court could have reasonably formed a firm conviction or belief that appellant engaged in conduct or knowingly placed his daughters with persons who engaged in conduct which endangered their physical or emotional well-being, and we therefore hold that the evidence is factually sufficient to support termination on that ground. *See* Tex. Fam. Code Ann. § 161.001(1)(E) (West Supp. 2011). We overrule appellant's third issue.

## III. We do not reach appellant's second issue concerning the trial court's finding under subsection (Q).

Along with a best interest finding, a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination. *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.). We therefore do not reach appellant's second issue contending that the evidence is factually insufficient to support termination under subsection (Q). *See* Tex. Fam. Code Ann. § 161.001(1)(Q).

## IV. The evidence is factually sufficient to support the trial court's best interest finding.

In his fourth issue, appellant contends that the evidence is factually insufficient to support the best interest finding. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a) (West 2008). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)   the desires of the child;

(B)   the emotional and physical needs of the child now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

These factors are not exhaustive. Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

The Department caseworker testified that the girls were together in a therapeutic foster home, their second home since the April 2010 removal. She explained that "they have some behavior issues and other issues that do not make them appropriate for just a regular foster home." When the Department removed them, they urinated and defecated on themselves and furniture and smeared feces. They continued to have night terrors and take psychotropic medications. E.A.M. had a speech impediment, a phonological disorder, and an expressive language disorder and was receiving speech therapy. The girls'

former therapist testified that E.A.M. had "issues," that she was "very active or even hyperactive," and that it was "hard to . . . get her to focus." Both girls were receiving counseling.

The caseworker stated that the girls had improved since coming into care but that they were going to need extra attention and effort in the future and are "[n]ot what you would call normal." The caseworker opined that appellant would not be able to deal with the girls' special needs. She stated that he had not demonstrated an understanding of the neglect triggering the removal, the girls' emotional and psychological issues, or their developmental delays. Ryan reported that appellant was unaware of his daughters having any special developmental needs or behavioral problems. Ryan also testified that with appellant's "level of functioning and education and his viewpoints," he would not be able to properly care for an "average, every[]day, happy six[-]year[-]old," much less a child with "any form of special needs or any abuse history or neglect history [who] has compound issues and possibly psychiatric issues that would require medication."

Appellant testified that he did not think that the girls had any speech or developmental delays. But he also stated that he would continue their medications and therapy if he regained custody, as well as provide for their basic needs.

Appellant testified that he had seen the girls once since his December 2009 incarceration; trial was March 23, 2011. E.A.M. acted out during that visit.

17

The caseworker testified that E.A.M.'s behavior had also deteriorated after that visit.

The CASA volunteer testified that the girls had told her that they missed their parents and wanted her to send the pictures they colored to them. E.J. testified that the girls love appellant very much and are both "daddy's girls," and appellant's mother testified that the girls love him. The caseworker admitted that the girls had occasionally indicated that they missed him but said that they had stated nothing in depth or lengthy. She testified that the case notes indicated that the girls had expressed a dislike or hatred of appellant.

Vida Phoenix, the girls' former therapist who treated them for more than a year, testified that the girls never introduced the subject of their father. She did not note any upset feelings or yearning for him at all. She admitted that a couple of her notes showed that E.A.M. had spoken of hating appellant in two sessions soon after her visit with him. But Phoenix testified that there was no evidence that the girls did not want to see or talk to their father. She also testified that she saw no evidence that the girls had a strong bond with him.

The Department caseworker opined that termination of appellant's parental rights would be in the children's best interest. E.J. admitted that terminating appellant's rights would be in the children's best interest so that they could have some permanency and stability. Appellant's mother agreed that he was not able to take care of them at the time of trial because he was confined. Appellant admitted that he believed that he needed additional time to be a better parent.

18

He was also willing to utilize services the Department could offer, like counseling, to improve his ability to parent. The caseworker acknowledged that providing services to appellant while he was incarcerated was difficult.

According to the caseworker, no relative or fictive relative had come forward to be considered as a possible placement. The caseworker believed that the children were adoptable but admitted that no prospective adoptive homes had been brought to the Department's attention.

Reviewing all the evidence with appropriate deference to the factfinder, *see H.R.M.*, 209 S.W.3d at 108, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of the parental relationship between appellant and daughters A.J.M. and E.A.M. is in the girls' best interest, and we therefore hold that the evidence is sufficient to support the best interest finding.[4] We overrule appellant's fourth issue.

---

[4]*See* Tex. Fam. Code Ann. § 161.001(2).

## V. We affirm the trial court's judgment.

Having overruled appellant's dispositive issues, we affirm the trial court's judgment.

                                        TERRIE LIVINGSTON
                                        CHIEF JUSTICE

EN BANC

WALKER, J., filed a concurring opinion in which GABRIEL, J., joins.

DAUPHINOT, J., filed a dissenting and concurring opinion, in which MEIER, J., joins.

DELIVERED:  July 16, 2012



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00137-CV

IN THE INTEREST OF A.J.M.
AND E.A.M., CHILDREN

----------

FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY

----------

## CONCURRING OPINION ON APPELLANT'S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION
----------

I concur in the result reached by the majority. I write separately to clarify

what I understand to be the holding of *In re D.W.*, 249 S.W.3d 625 (Tex. App.—

Fort Worth), *pet. denied*, 260 S.W.3d 462 (Tex. 2008).[1]

In *D.W.*, an en banc majority of this court held:

Section 263.405(i)[2] interferes with our power to exercise discretion
in determining whether to consider issues not listed in a statement of

---

[1]The undersigned author was not a member of the original three-judge panel in *D.W.*

[2]All references are to the former section 263.405(i). *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332

points, even in absence of prejudice to the Department. The statute bars our consideration of all issues not listed even when they were properly preserved for review under the rules of procedure. In effect, the legislature decides for us that complaints not listed in a timely statement of points are waived. In so doing, section 263.405(i) infringes upon our ability to exercise a "core power" reserved for the judicial branch by telling us not only *how* we must rule on issues brought before us but that we cannot consider those issues at all. We hold that section 263.405(i) is, therefore, void as a violation of the separation of powers provision of the Texas constitution. . . .

Because section 263.405(i) is void, we are not barred by that statute from considering points that were not listed in a statement of points so long as they were properly preserved for appellate review.

*Id.* at 645. Though our holding was not worded as precisely as it could have been, my understanding was that we declared section 263.405(i), *as applied to Betty*, the mother involved in the appeal, or to other similarly situated parents, violative of the separation of powers provision of the Texas constitution. We used the word "void" but nonetheless limited our holding that the provision was void to situations, like Betty's, in which points (or issues) sought to be raised on appeal had been properly preserved for appellate review in the trial court. *See id*. Consequently, despite our use of the word void, we declared section 263.405(i) void, only as applied to Betty, because she had properly preserved in the trial court the issues she sought to raise on appeal.

---

(adding subsection (i), requiring statement of points, to section 263.405 of the family code), *repealed by* Act effective Sept. 1, 2011, 82nd Leg., R.S., ch. 75, §§ 5, 8, 2011 Tex. Gen. Laws 348, 349 (deleting subsection (i) but noting that former section 263.405 remains in effect for final orders rendered before September 1, 2011).

In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995); *see also City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240–41 (Tex. 2001) (Owen, J., concurring). Facial challenges to the constitutionality of a statute are disfavored and generally permitted only in the context of the First Amendment. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S. Ct. 2168, 2175 (1998); *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 n.8 (Tex. App.—Austin 2007, pet. denied). To sustain a facial challenge, the challenging party bears the heavy burden of demonstrating that the statute is unconstitutional in all of its applications. *In re Commitment of Fisher*, 164 S.W.3d 637, 655 (Tex.), *cert. denied*, 546 U.S. 938 (2005). A statutory provision is not facially unconstitutional unless no set of circumstances exists under which the statute may be constitutionally applied. *HCA Healthcare Corp. v. Tex. Dep't of Ins.*, 303 S.W.3d 345, 349 (Tex. App.—Austin 2009, no pet.). To sustain an as-applied challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Garcia*, 893 S.W.2d at 518. As-applied challenges are fact specific and must be brought on a case-by-case basis. *Combs*, 239 S.W.3d at 272 n.8.

Implicit in our *D.W.* holding—that section 263.405(i) is void as violating the separation of powers provision of the Texas constitution when it operates to bar this court from considering points presented on appeal that were properly

3

preserved in the trial court—is the holding that section 263.405(i) does not operate unconstitutionally when it bars this court from considering points that were not properly preserved in the trial court. Nor would section 263.405(i) operate unconstitutionally if an attorney was able to list in a timely filed statement of points all issues that he desired to raise on appeal. Consequently, in *D.W.* we did not hold that Betty had met the heavy burden of demonstrating that section 263.405(i) was unconstitutional in all of its applications, as required to establish that a statute is facially unconstitutional. *See generally* 249 S.W.3d at 645.

Because *D.W.* simply declared section 263.405(i) void and unconstitutional as applied to Betty and as applied to the particular set of facts that exist when the section operates to preclude us from reviewing appellate issues raising preserved error, not facially unconstitutional, I believe the majority opinion and the dissenting and concurring opinion create and address a stare decisis issue when none exists in fact. As cited above, the supreme court did not overrule *D.W.*; the supreme court denied petition for review in *D.W.*, leaving intact this court's en banc determination that section 263.405(i) was unconstitutional as applied to Betty and, ultimately, as applied to other parents similarly situated to Betty who raise an as-applied challenge. Because an as-applied challenge must be made by each appellant claiming that section 263.405(i) operates unconstitutionally or is void as applied to them, when an appellant did not make an as-applied constitutional challenge to section 263.405(i), we followed the dictates of that provision and refused to consider an appellate issue not set forth

4

in the statement of points. *See, e.g.*, *In re G.G.C.*, No. 02-10-00354-CV, 2011 WL 1600840, at *3 (Tex. App.—Fort Worth April 28, 2011, pet. denied) (mem. op.) (refusing to consider legal and factual sufficiency of evidence issues not set forth in statement of points); *In re H.S.B.*, No. 02-10-00324-CV, 2011 WL 1434948, at *1 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op.) (refusing to consider complaint that Department violated family code by not placing children with couple that mother suggested when that complaint not set forth in statement of points); *In re O.E.W.-K.*, No. 02-10-00199-CV, 2011 WL 1225470, at *24 n.35 (Tex. App.—Fort Worth Mar. 31, 2011, no pet.) (mem. op.) (refusing to consider issues regarding admission of evidence that were not set forth in statement of points); *In re K.B.*, No. 02-09-00441-CV, 2010 WL 4028107, at *15 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.) (refusing to consider constitutional challenge to section of family code not set forth in statement of points); *accord In re M.E.-M.N.*, 342 S.W.3d 254, 260 (Tex. App.—Fort Worth 2011, pet. denied) (granting motion for supplemental briefing and ordering that points in appellate brief be treated as statement of points for appeal when appointed trial counsel allowed to withdraw and appellate counsel not appointed within time to file statement of points); *In re E.H.*, No. 02-09-00134-CV, 2010 WL 520774, at *2 n.3 (Tex. App.—Fort Worth Feb. 11, 2010, no pet.) (mem. op.) (addressing sufficiency complaints not raised in statement of points based on supreme court's holding in *In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009)). When appellants have made an as-applied constitutional challenge to

5

section 263.405(i), we have addressed the merits of their issues, even when those issues were not presented in a timely filed statement of points. *See In re J.T.V.H.*, No. 02-10-00416-CV, 2011 WL 4916388, at \*20 & n.17 (Tex. App.— Fort Worth Oct. 13, 2011, no pet.) (mem. op.) (addressing issue not set forth in statement of points when parent contended on appeal that statute requiring statement of points was void). Thus, especially in light of the fact that the legislature has repealed former section 263.405(i),[3] so that our holding in *D.W.*— whether a declaration of facial or as-applied unconstitutionality—has been statutorily abrogated, I do not believe this case is deserving of en banc submission.

---

[3]*See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (adding subsection (i), requiring statement of points, to section 263.405 of the family code), *repealed by* Act effective Sept. 1, 2011, 82nd Leg., R.S., ch. 75, §§ 5, 8, 2011 Tex. Gen. Laws 348, 349 (deleting subsection (i) but noting that former section 263.405 remains in effect for final orders rendered before September 1, 2011).

Because in the present case, Father raised in his appeal and in his statement of points an issue arguing that section 263.405(i) violates the separation of powers provision of the Texas constitution, I would hold that Father made an as-applied challenge to the constitutionality of section 263.405(i), and based on our holding in *D.W.*, I would reach the merits of his issues. Thus, I concur with the majority opinion's disposition of Father's appeal.

SUE WALKER
JUSTICE

GABRIEL, J., joins.

DELIVERED: July 16, 2012



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00137-CV**

IN THE INTEREST OF A.J.M.
AND E.A.M., CHILDREN

----------

FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY

----------

## DISSENTING AND CONCURRING OPINION ON APPELLANT'S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION[1]

----------

Although I agree with the majority that the evidence is factually sufficient to support termination and that the trial court's judgment should be affirmed, I dissent from the majority's reaffirming of *In re D.W.*[2] to reach the merits of Appellant's first issue. I would hold, as we held in our original unanimous panel opinion, that Appellant forfeited his first issue.

---

[1]*See* Tex. R. App. P. 49.7.

[2]249 S.W.3d 625, 645 (Tex. App.—Fort Worth) (en banc), *pet. denied*, 260 S.W.3d 462 (Tex. 2008) (per curiam).

This is not a case in which no statement of points was filed, nor is it a case in which the statement of points was filed late. Rather, this case is one in which the timely-filed statement of points violates the express provisions of former section 263.405(i),[3] a section which litigants, counsel, and the judiciary would probably all agree abysmally failed to meet its purpose of shortening the time that children in these cases are left in limbo.[4]

In 2008, this court held in *D.W.* that former section 263.405(i) is "void as a violation of the separation of powers provision of the Texas constitution."[5] We specifically held that the statute is facially void

> because it violates the Separation of Powers Clause of the constitution to the extent that it forecloses our power to review issues properly preserved for appeal because the statute unduly interferes with our substantive power as an appellate court to rehear and determine issues on the merits that were decided in the court below.[6]

---

[3]Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (adding subsection (i), requiring statement of points, to section 263.405 of the family code), *repealed by* Act effective Sept. 1, 2011, 82nd Leg., R.S., ch. 75, §§ 5, 8, 2011 Tex. Gen. Laws 348, 349 (deleting subsection (i) but noting that former section 263.405, including subsection (i), is still in effect for final orders rendered before September 1, 2011).

[4]*See In re E.A.R.,* 201 S.W.3d 813, 814–15 & n.2 (Tex. App.—Waco 2006, no pet.) (Vance, J., concurring) (quoting House Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B. 409, 79th Leg., R.S. (2005)).

[5]249 S.W.3d at 645.

[6]*Id.* at 640.

But the Supreme Court of Texas has done nothing to signal its support of our holding. In its opinion denying the petition for review of *D.W.*, the Supreme Court of Texas stated, "[W]e neither approve nor disapprove the holding of the court of appeals regarding the constitutionality of Texas Family Code section 263.405(i)."[7]

And the Supreme Court of Texas has signaled its rejection of *D.W.* Almost a year after denying the petition for review in *D.W.*, the Supreme Court of Texas upheld an as-applied challenge to the statute in *In re J.O.A.*, but it also provided the following advice for trial courts and counsel to increase compliance with the statute that our court had previously held void ab initio:

> Part of the problem here may be resolved by better communication between trial court and counsel. Often in these cases, there is a transition from trial to appellate counsel after rendition. Because of the accelerated appellate timetable and the critical fifteen-day deadline for the statement of points, and because trial and appellate counsel are often different people, there can be misunderstandings as to which attorney is responsible for filing a motion for new trial, a statement of points on appeal, and a notice of appeal.
>
> Given the accelerated timetable, the burden should logically fall on trial counsel . . . . As one court of appeals has noted, the fifteen-day deadline is a trap for the unwary. That court of appeals has further suggested that trial courts should alert parents to the requirements of section 263.405 at the end of the final order terminating parental rights. We agree and suggest further that the best way to avoid ineffective assistance of counsel claims in the future is for the trial courts to take a proactive approach, assuring that indigent parents do not inadvertently waive their appellate rights under the Family Code. Because of the accelerated nature of these

_____

[7] 260 S.W.3d at 462.

3

cases, trial courts must act expeditiously when appointing new counsel for the appeal.[8]

No justice dissented from the opinion, which did not mention *D.W.*

Justice Willett filed a concurring opinion in which he "stress[ed] steps that trial courts can take" to ensure that attorneys preserve their clients' appellate rights by filing timely statements of points and that attorneys do not, in any case, "intentionally eva[de] appellate requirements."[9]  The concurrence also did not mention *D.W.*

Almost nine months later, the Supreme Court of Texas handed down its opinion in *In re J.H.G.*,[10] a case in which the mother, like the father in the case at bar, also filed a timely statement of points but did not raise her issue concerning the trial court's extension of the statutory deadline in the statement of points. The Supreme Court of Texas held,

> The mother timely filed a statement of points with the trial court contesting the legal and factual sufficiency of the evidence, but she did not challenge the trial court's extension of the statutory deadline.  The Family Code requires that any party seeking an appeal of a final order must file with the trial court a statement of points of error on which it intends to appeal.  The statement of points must be filed within fifteen days of entry of the final order.  The court of appeals may not address an issue that is not included in a timely filed statement of points.  Although the mother did not include the trial court's failure to dismiss in her points for appeal, the court of appeals held that the issue was not waived because it bore on the

---

[8]*In re J.O.A.*, 283 S.W.3d 336, 343–44 (Tex. 2009) (citations omitted).

[9]*Id.* at 347–48 (Willett, J., concurring).

[10]302 S.W.3d 304 (Tex. 2010).

trial court's subject matter jurisdiction. This holding is directly contrary to our decision in *In re Department of Family and Protective Services,* in which we held that the section 263.401(a) dismissal date is procedural, not jurisdictional. As such, the mother's failure to challenge the trial court's extension of the statutory deadline in her statement of points waived the issue on appeal.[11]

The unanimous per curiam opinion did not mention *D.W.* But by applying former section 263.405(i) to bar a parent from presenting an issue on appeal, the Supreme Court of Texas nevertheless rejected completely, *sub silentio*, our en banc holding in *D.W.* that the statute is void ab initio. I believe that we are bound to accept this rejection, however subtle.[12]

And all seven members of this court have done so. Since soon after the Supreme Court of Texas handed down *J.H.G.*, six of the seven members of this court have authored or joined unanimous panel opinions explicitly following *J.H.G.* and implicitly recognizing the Supreme Court of Texas's rejection of *D.W.*[13] Finally, even the seventh member of the court has authored a unanimous

---

[11]*Id.* at 306 (citations omitted).

[12]*See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (stating that once the Supreme Court of Texas announces a proposition of law, the decision becomes binding precedent, and "it is not the function of a court of appeals to abrogate or modify established precedent").

[13]*In re A.S.D.*, No. 02-10-00255-CV, 2011 WL 5607608, at *1 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (citing *J.H.G.* for proposition that court is prohibited from addressing issue parent did not raise in statement of points); *In re G.A.H.*, No. 02-11-00015-CV, 2011 WL 4711980, at *7 (Tex. App.—Fort Worth Oct. 6, 2011, no pet.) (mem. op.) (same); *In re G.G.C.*, No. 02-10-00354-CV, 2011 WL 1600840, at *3 (Tex. App.—Fort Worth Apr. 28, 2011, pet. denied) (mem. op.) (same); *In re H.S.B.*, No. 02-10-00324-CV, 2011 WL 1434948, at *1 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op.)

5

panel opinion citing *J.H.G.* and former section 263.405(i) for the proposition that a party's failure to include an issue in its statement of points results in forfeiture—

> [F]amily code section 263.405(i) prohibits an appellate court from considering "any issue that was not specifically presented to the trial court in a timely filed statement of points . . . or in a statement (of points) combined with a motion for new trial." [Tex. Fam. Code. Ann.] § 263.405(i); *see In re J.H.G.,* 302 S.W.3d 304, 306 (Tex. 2010) ("The court of appeals may not address an issue that is not included in a timely filed statement of points.")[14]

—without citing *D.W.* and without stating that this court had previously held the quoted statute facially void.

I believe that our court should therefore now explicitly recognize that the Supreme Court of Texas has rejected *D.W.* and that we are bound to do the same. I would follow the statute and *J.H.G.* and hold that Appellant forfeited his first issue on appeal by not specifically presenting it to the trial court in his statement of points.[15] Because the majority instead reaches the merits of the

---

(same); *In re O.E.W.-K.*, No. 02-10-00199-CV, 2011 WL 1225470, at *24 n.35 (Tex. App.—Fort Worth Mar. 31, 2011, no pet.) (mem. op.) (same); *In re K.B.*, No. 02-09-00441-CV, 2010 WL 4028107, at *15 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.) (same); *but see In re J.T.V.H.*, 02-10-00416-CV, 2011 WL 4916388, at *20 & n.17 (Tex. App.—Fort Worth Oct. 13, 2011, no pet.) (assuming without deciding that issue was preserved despite parent's failure to file statement of points when parent also contended on appeal that statute was void).

[14]*In re M.E.-M.N.*, 342 S.W.3d 254, 260 (Tex. App.—Fort Worth 2011, pet. denied).

[15]*See In re J.L.J.*, 352 S.W.3d 536, 540–41 (Tex. App.—El Paso 2011, no pet.); *In re J.J.C.,* 302 S.W.3d 436, 444 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

issue by reaffirming our holding in *D.W.* that section 263.405(i) is void—despite all contrary signals from the Supreme Court of Texas—I respectfully dissent from the majority's treatment of Appellant's first issue.

LEE ANN DAUPHINOT
JUSTICE

MEIER, J., joins.

DELIVERED: July 16, 2012